SNYDER vs. WARFORD & THOMAS.

1. The right of way of necessity, exists in all cases in which an individual owns land surrounded by other lands excluding it from any public highway.

2. The act of 17th March, 1845, only provides a mode for establishing a right already existing.

3. A right of way is only an easement; it is no interest in land, and the act of the Legislature does not apply private property to any private use.

ERROR to Howard Circuit Court.

Davis, *for Plaintiff in error.*

The plaintiff insists, that except the limitation which the Constitution imposes upon a man's real estate—that of being taken for public use—that he owns it subject to his own will and pleasure, as to sale or disposition, while not in debt.

In the 4th volume of Kent's commentaries, page 5, it is declared, that "every restraint upon alienation is inconsistent with the nature of a fee simple," and that "no person is capable of having a greater estate or interest in land."

The quantity of land taken is not the criterion by which the right is to be judged. If one square foot of a man's farm may be taken, when occasion may require, all or so much may be taken as to render his land wholly useless to him.

The 7th section of the act provides that the owner of the land or any other person shall be subject to the like fines for obstructing this right of way, that he would be if he obstructed a public highway.

The 8th section provides, that upon the establishment of the right of way as provided, the same shall vest in the party, his heirs or assigns, forever. R. C. p. 1075.

The plaintiff insists, that the provisions of this act are at war with his fee simple estate in the land; that if his private property is to be taken and given over to the defendants for their *private* use, that the State Constitution had better be first slightly amended. Sec. 7, art. 13 of the Constitution of Mo.; 5 Dana, 32; 7 Dana, 87; 9 Dana, 114.

Clark, *for Defendants in error.*

The defendants in error, rely upon art. 13, sec. 7, of our Constitution, and the act of the legislature, entitled "An act to enable persons to secure the right of way in certain cases," approved March 24, 1845, to sustain the judgment of the Circuit Court.

Napton, J., *delivered the opinion of the Court.*

The only object of the pleadings in this case was to bring up the question of the constitutionality of an act of the Legislature, passed March

24, 1845, entitled "An act to enable persons to secure the right of way in certain cases." It is unnecessary to state the pleadings in detail. The action was trespass, and a special plea was put in by the defendants, justifying the trespass under a right of way, established according to the provisions of the abovementioned act. A demurrer was filed and over-ruled and judgment for the defendants.

The statute in question is thought to be unconstitutional, as an encroachment upon that absolute property in land which a title in fee simple implies—an encroachment, it is supposed, not called for by the public interest, but designed for the benefit of private individuals. The principle asserted by the appellant is, that a man cannot be *compelled* to part with any portion of his land to another, and this principle is supposed to condemn the statute, which is under consideration.

This argument is based upon an erroneous idea of the nature of a right of way. It is not any interest in land, but merely an easement, which conflicts not in the slightest degree with the absolute proprietorship of the owner. It is a right recognized by the common law, and originates in grant, or in England by prescription and custom, and both here and in England, by necessity. Some writers have thought that what is termed a right of way by necessity, has its origin in the same manner in which a right of way by grant arises. It is an implication from the grant. It is not, however, material whether this right be traced to the grant or to necessity; its existence and recognition by the common law, *from time immemorial*, is beyond doubt. The right of way from necessity is thus stated by an elementary writer: "If a person having a close, bounded on every side by his own lands, grants the close to another, the grantee shall have a way to the close, as incident to the grant, or as it is sometimes termed, a way of necessity; for otherwise he cannot derive any benefit from the grant." 2 Sel. N. P., 1041. So if the middle close be reserved, and the surrounding land sold, a way is reserved to the grant-or. The United States being the proprietor of a section of land, entirely surrounded by eight other sections, sells the section so surrounded; the purchaser acquires, by the common law, a right of way to the land he has bought, as a necessary incident of the grant. The case is not altered by the United States selling the surrounding land to different individuals. The purchasers take it subject to the burden imposed on it whilst it belonged to the government, the original proprietor. A way of necessity exists after unity of possession of the close, to which and the close over which the way exists, and after a subsequent severance. 2 Sel. N. P., 1042.

The statute merely provides a mode of establishing and opening a way under circumstances in which a right of way previously existed. The first section specifies the cases in which the proceedings subsequently authorized are applicable. It is only where a man's land is "surrounded or enclosed, or shut out and cut off from a public highway," that proceedings are allowed to have a road designated and opened. The 8th section provides that the right of way, when established in the mode pointed out by the act, shall vest in the party and his heirs and assigns forever. Can anything be more consonant to the principles of natural equity, if the law were silent on the subject?

It is a mistake, we apprehend, to suppose that a man has that absolute and unlimited dominion over his real or personal property which enables him to control it at his mere will and pleasure. The proposition must be qualified. His power and authority are restricted, but only so far as that its exercise shall not impair the rights of others. An absolute and unrestricted use of property is not compatible with the condition of a civilized society, however it might be tolerated by men in a state of nature. Sir W. Blackstone says, that every man, when he enters into society, gives up a part of his natural liberty, as the price of so valuable a purchase as the acquisition of social and municipal relations. Mr. Jefferson denied this doctrine, because he was of opinion that no man had a natural right to commit aggression on the equal rights of another, and that every man was under the natural duty of contributing to the necessities of society, and that no man had the natural right to be the judge between himself and another, but was bound to submit to the umpirage of an impartial third. This contrariety of opinion between Judge Blackstone and the American statesman is rather apparent than real, for Blackstone's definition of natural rights is far more comprehensive than Mr. Jefferson's. The former supposes "natural liberty to consist properly in a power of acting as one thinks fit, without any restraint or control, unless by the law of nature." If this law of nature, as Mr. Jefferson thinks, comprehends those restrictions which "the equal rights of others"—the duty of contributing to the necessities of society—and submitting to the decision of impartial judges, in disputes between individuals—would imply, there is no essential difference between the opinions alluded to; and this definition of Mr. Jefferson seems to be confirmed by Burlamaqui. "Moral or natural liberty," says the writer, "is the right which nature gives to all mankind of disposing of their persons and property after the manner they judge most consonant to their happiness, on condition of their acting within the limits of the law of nature, and *that*

*they do not in any way abuse it to the prejudice of any other man.*"—
So that, whether we regard it as a principle of natural law or as origi-
nating in municipal or social institutions, the right of a man in the use
of his property is restricted by a due regard to the equal rights of others.
"*Sic utere tuo, ut non alienam laedas,*" is a maxim of the common law,
as well of common justice and sound morals. In the present case, we
have a great landed proprietor, the United States, owning an extensive
tract of country, parcelled out for sale by surveys, not leaving any space
between the parcels for the public use. The grantee of one tract or
close, as it is called by the law writers, can have no access to or egress
from his land except by a way over the tracts contiguous to and surround-
ing it. He has an estate as absolute and unrestricted as that of his neigh-
bors, the adjoining proprietors, or the United States, if the adjoining
lands are unsold. Yet this estate and these rights are but empty names,
unless he can get to and from his land, and this he cannot do, by a phys-
ical necessity, unless by a way passing over these adjoining lands. It
would seem to be no more than a principle of natural justice, that this
right of way should exist, although its existence may, to some extent,
interfere with the absolute dominion of the coterminous proprietors. If
not a principle of natural law, it is at least one which could not long be
omitted in the code of a civilized people.

But if this right of way *of necessity* finds no support in the law of na-
ture, and if it were a stranger to the common law, which our ancestors
brought with them from England, what is there to prevent the legislature
from making it the law? The provision in our State constitution that
private property shall not be taken for public uses, except a suitable
compensation be made, has no application to this subject. The statute
under consideration does not authorize the taking of private property,
either for public or private uses. The right of way, as we have before
observed, is no estate or interest in land, but an easement. It is like the
right of *common*—one species of which is, the right of one man to pas-
ture his cattle upon another man's land. Can it be doubted that the leg-
islature have the power of introducing the right of common, as it existed
in England or under the Spanish law, without infringing upon any con-
stitutional restriction? We will not be understood as expressing any
opinion upon the right of the legislature to take private property for pri-
vate or individual uses, whether with or without compensation. If a
street or a road were laid off on land belonging to a citizen, in a case *where
the right of way was created by the act,* this question would arise. The
act in question has no other purpose, as we understand it, than to pro-

vide a convenient mode of fixing the locality of a way, the right to which is already in existence.

It is to be noted that this act of the legislature providing a convenient mode of establishing a right of way from necessity, is not subject to the objection of being *special* or local legislation. The right of way is in the act called a *private* right of way, and is confined to the person and his heirs and assigns, at whose instance the proceedings are had, but the provisions of the act are available to all who are in the situation described therein. It is not a law declaring that A shall have a right of way over B's land, under specified circumstances, but that every other citizen of the State who is similarly situated shall have the same right or privilege.

We have been referred to some decisions made by the Court of Appeals in Kentucky, and reported in Dana, as calculated to elucidate the subject under consideration, but the reports are not accessible. We regret to be under the necessity of determining the case without the aid of such authorities; but if the cases referred to, as it has been stated, discuss the power of the legislature to take private property for private uses, we confess our inability to see any applicability which a view of that question would have to the present.

The other Judges concurring, the judgment of the Circuit Court is affirmed.