J. R. CHASE, Appellant, v. MONT. HALL, Respondent.

St. Louis Court of Appeals, April 29, 1890.

1. **Practice, Trial:** INJUNCTIONS : FINAL JUDGMENT. An order merely dissolving a temporary injunction is not a final judgment, but a judgment, dissolving the temporary injunction, and further dismissing the plaintiff's bill and discharging the defendant, is a final judgment; and a motion for new trial may properly be filed after such judgment and before the assessment of damages on the injunction bond.

2. **Conveyances:** IMPLIED EASEMENT. If one grants a close, which is inaccessible, except over his own land, he impliedly grants with it a right of way over his land. And in a case wherein the implied grant resulted from a conveyance. which was recorded, *held* that the assigns of the grantor were affected with notice and bound by it, and that it inured to the benefit of the assigns of the grantee.

3. ——— : ——— : CONSIDERATION OF INTEREST OF SERVIENT ESTATE. In a case wherein a lease was made of the second story of a building, to which the only means of access were by a temporary stairway which was partially built over a stranger's property, *held* that, on the removal of this stairway, the assignee of the lessee was entitled to construct another stairway over the premises of the landlord to said second story, though his so doing would necessarily be detrimental to the occupancy of the first story of said building ; but *held*, further, that the landlord was entitled to have his interest and convenience considered in the selection of the place for the new stairway and the manner of its construction.

*Appeal from the Newton Circuit Court.*—Hon. Jos. Cravens, Judge.

REVERSED AND REMANDED.

*James H. Pratt*, for appellant.

*J. T. Sturgis, N. C. Gallemore* and *A. J. Harbison*, for respondent.

Biggs, J.—This is an injunction proceeding to restrain the defendant from erecting a stairway on the outside of a building to the second or upper story. After a hearing of the evidence, the court dissolved the injunction and dismissed the suit. Afterwards, at the same term, there was, on motion of the defendant, an assessment of damages, by reason of the injunction, and final judgment was entered against the plaintiff for the amount of damages found by the jury. The plaintiff has appealed.

The facts in the case may be briefly stated as follows : In 1884, Jonathan Norris was the owner of a lot in the town of Seneca, in Newton county, Missouri. The lot fronted twenty-five feet on a street and extended back in an eastward direction one hundred and fifty feet. The adjoining lots were owned by other parties. Norris erected on the front part of his lot a two-story building, twenty-five feet wide and fifty feet long, and

the Masonic lodge of the town paid the cost of the construction of the upper story under an agreement for a lease for a term of ninety-nine years. The lease was properly executed, acknowledged and recorded, and, after the completion of the building, the lower story was occupied by Norris as a dry goods and grocery store, and the upper story was occupied by the Masonic lodge. The plaintiff, at the institution of this suit, was the owner of the Norris title. The only way to or from the upper story was a stairway erected on the south side of the building from the sidewalk in front. This staircase rested on and extended over the lot of the adjoining owner. In 1889, the owner of this lot commenced a building thereon, and the lodge was compelled to remove the stairway. The lodge then sold and transferred its interest in the lease to the defendant, and he proceeded to construct a stairway to the upper story at the rear end of the building.

This action by the defendant brought about this litigation in which the plaintiff sought to enjoin the defendant from building the stairway upon the grounds that his action amounted to a direct trespass upon plaintiff's property, and that the construction of the stairway in the place and in the manner proposed cut off the light to the storeroom from the rear window, and thereby rendered the room almost valueless for business purposes. The defendant's answer was to the effect that the upper story of the building was worthless in its then condition ; that, as the owner of the lease, he had the right to erect the stairway ; that the place where he contemplated putting it was the most suitable, and that the structure at this place would do the plaintiff less damage, than if erected at any other place available to the defendant.

Before we pass to the discussion of the merits, it will be better to notice an alleged irregularity in the proceedings, to which our attention has been called by

the defendant's counsel.   Immediately after the disso-
lution of the injunction and the dismissal of the bill,
the plaintiff filed his motion for a new trial, in which
the attention of the court was properly called to the
alleged errors now complained of.   A few days after-
wards, but during the same term, there was an inquiry
of damages ; final judgment was entered for the dam-
ages assessed by the jury, and, on the same day, the
plaintiff filed a second motion for a new trial, in which
only the errors complained of in the last proceeding
were mentioned.   Both motions were then overruled by
the court, and the plaintiff duly excepted.   It is now
insisted by the defendant's counsel that the first motion
was inoperative, by reason of the fact that it was filed
before the final judgment in the case.   It has been held
in this state and elsewhere that the *mere dissolution* of
a temporary injunction is not such a final judgment as
will authorize an appeal ; but this rule is not applicable
to this case, because the entire proceeding was dismissed
and the defendant finally discharged.   If the defend-
ant's theory of the law should be adopted, then a plain-
tiff's right of appeal in such a case would be made to
depend upon the defendant's action in moving for an
assessment of damages on account of the injunction.
The authorities relied on by defendant's counsel merely
hold that the dissolution of a temporary injunction,
without more, does not amount to a final judgment.
*Tanner v. Irwin*, 1 Mo. 65 ; *Johnson v. Board of Ed.*,
65 Mo. 47 ; *Witthaus v. Bank*, 18 Mo. App. 181.

   The first position taken by the plaintiff is that the
defendant, as the owner of the lease, had no right to
construct another stairway, and that, therefore, his
entrance upon the plaintiff's premises for that purpose
was a trespass.   We cannot yield our assent to this
proposition.   The lease, under which the defendant
claims, was of record at the time when the plaintiff
purchased, and the latter was bound to take notice of its
provisions.   When Norris made the lease he impliedly

granted to the Masonic lodge, or its assigns, the right to pass over his lot for the purpose of gaining access to that part of the building conveyed by the lease. The rule is that, if one grants a close which is inaccessible except over his own land, he impliedly grants with it the right of passing over that land. Otherwise the grantee would derive no benefit from the grant. *Nicholas v. Luce*, 24 Pick. 102 ; s. o., 35 Am. Dec. 302 ; *Snyder v. Worford*, 11 Mo. 513 ; Goddard, Easements, p. 94. It is reasonable to conclude that the stairway constructed on the adjoining lot was regarded by both parties to the lease as a temporary arrangement, and that it was liable to be removed at any time by the owner of the lot. It must have been within the contemplation of the parties that, whenever the adjoining owner required the stairway to be removed, the lessee would have the right to construct a stairway at some other place. The value of the lease, under a different construction of the contract, would be made to depend entirely on the action of the owner of the adjoining lot. But the defendant, in making the selection for a new site for a stairway, would have to regard the interest and convenience of the plaintiff as the owner of the lot and the lower portions of the building, and the law will compel him to erect the structure in such a manner and in such place as will result in the least damage to the plaintiff's property. *Nicholas v. Luce, supra.*

The evidence shows that the only light to the back portion of the plaintiff's storeroom comes from a window located at the east end, near the south side of the building ; that the place selected by the defendant for the stairway was immediately in front of this window, and that the stairway was to extend up to a landing just above the top of the window ; that the stairway, if built in this manner, would exclude the greater portion of the light from the back part of the storeroom, and greatly damage it for business purposes. And the evidence also tended to show that the superstructure of

the staircase would obstruct and prevent the use of a small shed room, located and attached to the east end and on a line with the north side of the building. This shed room was ten or twelve feet long and one story high. Notwithstanding these facts, if the place selected by the defendant was the only one available to him, or if the proposed location would result in the least possible damage to the plaintiff's storeroom, then the judgment is right; but on the other hand, if it was possible for the defendant to build the stairway at a reasonable cost at a different place and with materially less injury to the plaintiff, then the decree is wrong and must be reversed.

In equity cases it is the practice of appellate courts to defer to a great extent to the findings of the trial judge on questions of fact, but, when it is manifest that there has been a misapplication of the law to the facts, then it is our duty to interfere and correct the wrong. The undisputed evidence of both parties shows that it was practicable for the defendant to construct a staircase at the east end of the shed room, and the main building could then be reached by a platform extending over the shed room ; that, in this way, the window would in no way be obstructed, and the superstructure of such a stairway would in no manner interfere with the use of the shed room by the plaintiff for the storage of goods. We extract the following from the testimony of the various witnesses bearing directly on this question.

The plaintiff said : " Q. There is a shed here ? A. Yes, sir.

" Q. How far does it extend from the other building ? A. Twelve or fourteen feet.

" Q. Does the shed extend clear across the building ? A. Little over half of the building.

" Q. The stairway is on the south half ? Would it be practicable to build a stairway up over the shed ? A. I suppose it could be done.

" *Q.* By running back and climbing over the shed ? *A.* Yes, sir ; that is the only way you could do it.

" *Q.* It extends back fourteen feet ? *A.* Yes, sir. \* \* \*

" *Q.* Is there any place else, but the back part of the building, where a stairway could be built up reaching the upper story, whereby it would be any less damage to you than the way it was built ? *A.* It would be less damage to have it built over the shed, but it would still be a great incumbrance to the property."

S. R. Havens testified : " *Q.* To build the stairway to the upper story, is there any way you know of by which a stairway could be built so as to go into the door and room back, so it would be less of an obstruction to the property than the way it was ? *A.* The only way would be to build over the shed ; that would be less damage to me, if I had to stay there."

John Norris testified : " *Q.* Is there any other way to get up to the upper story than the way it was built ? *A.* None that I know of ; not unless you would build it up over the shed, and erect a platform or something of the kind ; it might be arranged."

George Morrow, one of defendant's witnesses, testified as follows : " *Q.* From your knowledge of the premises is there any other way you could build a stairway leading up to the hall, to be able to build it by a less damaging method than the way it was built ? *A.* There is no other way to get at it, unless it might be built over the shed room, at the end, but there is no other way that I know of.

" *Q.* Any objection to building a stairway over that old shed room ? *A.* Possibly the same objection as the other ?

" *Q.* Would that be convenient to a person using the upper story ? *A.* Yes, just as convenient I suppose, would perhaps be more expensive to build it that way ; no other way without buying a lot or renting a lot.

"*Q.* Could a lot be rented or bought from Mr. Ball? *A.* No, he would not sell them any ground."

In this state of the evidence we cannot consent to the decree in this case. We are of opinion that the defendant has a right to build a stairway, but that he ought to construct it over the shed, and that he ought to be enjoined from building it in front of the window, as he was about to do when this temporary injunction was granted.

The decree in this case is wrong and ought to be reversed, but, as the plaintiff has appealed to a court of equity for redress, he ought and must do what a court of equity would require of him in the premises. The defendant, as we have shown, is entitled to the privilege of erecting a stairway, provided it is constructed in such a way as to do the plaintiff's property the least damage, and the obligation rests on the plaintiff to grant him this privilege. The judgment will, therefore, be reversed and the cause remanded with directions to dismiss the bill, unless the plaintiff will at the next term of the circuit court file his written consent, giving the defendant permission to construct a stairway over the shed. If this requirement is complied with, then the court will make the injunction perpetual. It is so ordered. All the judges concur.