## PETERSON v. MACHADO.

### No. 19,591; February 7, 1896.

#### 43 Pac. 611.

**Easement.**—A Deed Conveying "a Road and Right of Way over and across" land, "to be forever appurtenant to" adjoining land of the grantee, and providing that neither party shall, "nor shall his successors in interest, grant or give to any other person a right of way over said road," conveys only an easement for a right of way, and not a fee simple title.

**Easement.**—An Injunction to Enjoin a Grantee of an Easement for a right of way from interfering with the grantor's laying pipes beneath the right of way, to connect with a ram placed in a gulch which encroached on the right of way, should be granted, where the grantor offers to widen the right of way by moving his fence, or by changing the location of the ram, and filling up the gulch.

APPEAL from Superior Court, San Luis Obispo County.

Action by John Peterson against Domingo Machado for an injunction. From a judgment for plaintiff and an order denying a new trial defendant appeals. Affirmed.

Graves & Graves and F. A. Dorn for appellant; Wilcoxon & Bouldin for respondent.

BELCHER, C.—The plaintiff was the owner of a tract of land in San Luis Obispo county, which was bounded on its westerly side for a distance of about two thousand four hundred feet by a natural stream of water, known as "Sycamore" or "Los Osos" creek. He resided on this land with his family, his dwelling-house being about fifteen hundred feet distant from the creek, and was engaged in farming

the same, and raising stock, consisting of cattle, horses and hogs. The defendant owned two tracts of land, one adjoining the north side of plaintiff's land, and the other the south side thereof. In October, 1887, plaintiff, by an instrument in writing, granted and conveyed to defendant, and to his heirs and assigns, "a road and right of way for all purposes over and across the aforesaid land of Peterson, and to be forever appurtenant to the aforesaid land now owned by said Machado, which road shall be sixteen (16) feet wide, shall run along the east side of what is known as 'Sycamore' or 'Los Osos' creek, connecting the aforesaid two tracts of land now owned by said Machado, and the easterly line of which road is described as follows: [Setting out courses and distances.]" The instrument was executed by both parties, and contained numerous covenants to be kept and performed by them, and, among others, that within eight months said Machado "shall build and thereafter perpetually maintain one hog-tight fence along the east line of said road, as above described"; and that "said Peterson shall not, nor shall his successors in interest, grant or give to any other person a right of way over said road granted to Machado across the land of Peterson; and said Machado shall not, nor shall his successors in interest, give or grant to any person or persons who may be owners of his said land, or some part thereof, a right of way over said road." Subsequently, and about two years before the commencement of this action, plaintiff placed a water ram in the bed of the creek, where the same borders upon his land, and connected therewith a pipe, through and by means of which he conveyed water from the stream to his house, to be there used for domestic and culinary purposes and for watering his stock. The pipe crossed the roadway, but was there placed underground, and so as not to interfere with the use of the right of way. Afterward, in June, 1894, defendant dug up, cut and removed that part of the pipe which crossed the roadway, and thereby prevented the flow of any water from the said creek to plaintiff's house. This action was thereupon commenced to obtain an injunction restraining the defendant, his agents, servants and employees, from cutting or in any way interfering with the said pipe. The case was tried, and the court found that the defendant was the owner of an easement or right of way over the strip of land described, and, among other things: "(10) That the said ram was placed by

the plaintiff inside of said way, and inside of fourteen feet from the easterly line of said way, and the said plaintiff has placed eleven feet of pipe over and across the said way, underground; that the defendant's enjoyment of said way has never been, and is not, obstructed by said water ram and pipe. (11) The said stream in which said ram is placed runs through a gulch about six feet deep. Said gulch is along the west side of defendant's said way, and said ram is at the bottom of said gulch. Said gulch encroaches about six feet into said way of defendant at the point where said ram is placed. The road of defendant is on the bank of said gulch, six feet above said ram.'' Judgment was entered granting the plaintiff the relief prayed for, but providing: ''That defendant is permitted to widen his road along said way by filling up or bridging over the gulch described in said findings where the same encroaches upon his way. That plaintiff has no right to use said way in any manner that will prevent defendant from using said way for a convenient road, or to prevent defendant from repairing his road in any manner to fit the same for his convenient use.'' From this judgment, and an order denying a new trial, the defendant appeals.

1. The first point made for a reversal is that the plaintiff, by the instrument above referred to, granted to the defendant the fee simple title to the strip of land described therein, and hence had no right to lay his water pipe across the strip. The Civil Code declares that ''a fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended'': Sec. 1105. But grants are to be interpreted in the same manner as other contracts (section 1066), so as to give effect to the intention of the parties, so far as that intention can be ascertained (section 1636); and, to ascertain that intention, ''the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other'' (section 1641): Pellissier v. Corker, 103 Cal. 516, 37 Pac. 465; Barnett v. Barnett, 104 Cal. 298, 37 Pac. 1049. Tested by the foregoing rules, does it appear that the instrument in question here was intended to grant to the defendant a fee simple title? If it was so intended, why did it provide that the ''road and right of way'' are ''to be forever appurtenant to'' the land then owned by the grantee? ''A thing is deemed to be incidental or appurtenant to land

when it is by right used with the land for its benefit, as in the case of a way . . . . across the land of another'': Civ. Code, sec. 662. Again, if it was so intended, why did it provide that the grantor ''shall not, nor shall his successors in interest, grant or give to any other person a right of way over said road,'' and that the grantee ''shall not, nor shall his successors in interest, give or grant to any person or persons who may be owners of his said land, or some part thereof, a right of way over said road''? Obviously, if the grantor had no title left in him, he could not grant or give to any other person a right of way over the road, and the provisions that he should not was useless; and, if the grantee had a complete title, he could give or grant a right of way over the road notwithstanding the provision that he should not. Looking at the whole instrument, we conclude, therefore, that its object and purpose were to grant a right of way, and nothing more.

2. The next point is that if the instrument conveyed only an easement, and not a fee simple title, still defendant had a right to dig up and remove the said pipe, because it obstructed and interfered with his right of way. The court below found directly against defendant on this point, and we think there was evidence tending to support the finding. It was proved that the bank of the creek where the ram was placed was from six to ten feet high, and was nearly perpendicular, and that from the fence to the top of the bank was about twelve feet. The road was therefore narrow at that point, and, as stated by defendant, it was difficult, if not impossible, to drive a four-horse team with a loaded header wagon over it. This was because there was quite a sharp bend in the road there, and also because there was a large sycamore tree standing near, which made the passage round the bend more difficult. Defendant testified that he wanted to cut down the tree, but plaintiff objected to his doing so, and ''said the tree belonged to him, and not to do it. He says he sold me the right of way, but never sold me the timber.'' And one of his witnesses testified that ''if the tree would be taken down, and you drive four horses, it will give your leaders more room to swing around the road where the bend is.'' The plaintiff testified: ''I am prepared, at any time that defendant wishes to widen his driveway by putting in a bulkhead, to take my ram farther over, and would be willing to set my fence farther away. I told Machado that, whenever the rams interfered with his

road or his business, I would take them out of there; and, if he wishes to widen his road by putting in a bulkhead, I will take them away. The creek is very crooked; so is the road.'' In accordance with this offer, the judgment, as we have seen, permits the defendant to widen his road by filling up or bridging over the gulch described in the findings, where the same encroaches upon his way, and limits the plaintiff's right to use the way in any manner that will prevent defendant from using the same for a convenient road, or from repairing the same. As thus entered, the judgment promotes justice, and does no wrong to either party. There was no material error in the rulings of the court. The judgment and order appealed from should be affirmed.

We concur: Searls, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.