·SOFIE BLAZEK, Appellee, v. JOHN TELECKY, Appellant.

**DEEDS:** Quitclaim of Easement—Fraud. A quitclaim of a private way passes, at best, but an easement. Evidence held wholly insufficient to show fraud in obtaining such a conveyance.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

JULY 17, 1920.

SUIT to set aside a conveyance, as having been obtained by fraud, resulted in a decree as prayed. The defendant appeals.—*Reversed.*

*C. W. Bingham,* for appellant.

*S. V. Shonka,* and *Crissman & Linville,* for appellee.

LADD, J.—On December 19, 1918, the plaintiff, a widow, did:

"Quitclaim unto John Telecky, his heirs and assigns of the county of Linn, and state of Iowa, all my right, title and interest in and to the following described premises in the county of Linn, state of Iowa, to wit: A right of way described as follows, to wit: Over that portion of the main road now traveled by me to my residence across the lands I now own in the SE ¼ of NE ¼ of Sec. 16, and the NW ½

of NW ¼ of Sec. 15, all in Twp. 82, R. 6, W. 5th P. M., to
a point 102 feet north of a point in said road in said SW ¼
NW ¼ where the said road turns from a northeasterly to a
northerly direction, said first-mentioned point being mid-
way between two iron stakes twelve (12) feet apart thence
easterly, embracing a strip twelve feet wide, being six feet
wide from each side of said last-named point about 171½
feet to a point midway between two iron stakes 12 feet
apart, thence over the meandering road as now traveled
easterly and thence northerly to the west line of the West
½ of the NE ¼ NW ¼ in said Section 15."

It appears that the defendant owned a 20-acre wood lot
beyond plaintiff's land; that, for many years prior to
June 12, 1916, he had enjoyed a way over the land of plain-
tiff, then owned by her husband, in going back and forth to
said land, and that, on the last-named date, the husband,
with plaintiff joining, executed a lease to defendant for a
period of 10 years of "a private way to be used as a road
by the party of the second part [defendant] to enter upon
his land which joins the parties of the first part, the road
that the first parties are renting to the second party is the
old road that has always been used for this purpose in
going to and from the parties' of the second part land," at
a yearly rental of $2.50. Plaintiff's husband deeded the
land to her, and, shortly after his death, she obstructed the
way; and defendant instituted an action to compel the
removal of the obstruction, and to establish the private way
as a private easement over her land. · Issue was joined, and
the cause set down for trial, when the attorneys for the
parties, concluding that the cause should be settled, pro-
ceeded to the premises, and, after inspecting the way which
had been traveled for many years, arranged to so change
it that, instead of passing over cultivated land for a long
distance, it would touch such land only 171 feet, and, as
thus changed, defendant would have the private way; and
the deed was drawn accordingly. This deed was delivered
to defendant, and in this suit plaintiff prays that it be set
aside, for that, as is alleged, defendant, aided and abetted

by his attorneys, "by threats and intimidation, and by fraudulently taking advantage of plaintiff's ignorance of the English language, and by reason of her physical condition and weakness and mental incapacity, which facts were well known to said defendant and his attorneys, without any consideration therefor, secured the signature of plaintiff to an instrument which she then understood to be a temporary concession to defendant, relative to the trial of the case then pending in the district court of Linn County, Iowa, wherein John Telecky and Josephine Telecky were plaintiffs, and this plaintiff was defendant, being action No. 27052, and which she then understood was set for trial for the next day;" that, but for being misled and intimidated, she would not have signed said deed; that, "at the time of signing said instrument, she was frightened, nervous, and, by reason of the said threats, intimidation, and undue influence, and misrepresentations brought to bear upon her, as aforesaid, did not understand, and did not know the meaning or force and effect of said instrument." These allegations find scant, if any, support in the record. True, the plaintiff could not speak English, and had enjoyed only 7 years of schooling in Bohemia, and was a widow, with 6 children; but her testimony indicates the possession of average intelligence, and she was accompanied by an interpreter, who was a trusted friend, an attorney, whose good faith is not questioned, save by the issues raised, and a daughter, of 21 years, who understood and could speak English. Upon the arrival of the attorneys, accompanied by defendant, they proceeded to inspect the premises with respect to the way. Plaintiff sent for Havlicek, a neighbor, to act as interpreter, and, through him, her attorney informed her that the other attorneys were acting for defendant; that he had looked up the law, and that she "would have to have the road measured out." She knew what they came for, as her attorney had informed her by telephone, through the interpreter, the day before. With her attorney, Havlicek, and her daughter, she looked over the way, and observed what was being done, and was

present when the new portion, 171½ feet long, was being staked. Havlicek testified that defendant's attorney, Buresh, explained to her the substance of the conveyance, "told her that the property belonged to her just the same, but Telecky would be allowed to use that land over the field;" that, when out on the premises, plaintiff, her attorney, and the witness had a talk about the matter, and the attorney advised her that "it was all right, and if not, we would have to let it go to court;" that plaintiff was standing close by, when the measuring of the new line was being done; that plaintiff was in the kitchen when a rough sketch of the road was made, and the deed prepared, and that Buresh took her acknowledgment. According to her attorney, he advised her, through the interpreter, that it was the settlement to make, and also that she sign the deed. Buresh swore that he heard a conversation between plaintiff, her attorney, and the interpreter, in which plaintiff proposed that defendant go near the house, and then follow a ravine; and that her attorney replied that this would not be possible, but suggested the change heretofore referred to; and that, in response to a question by plaintiff, the interpreter said he thought that the change would be all right; that this was before it was measured; that she was there when the measuring was done; that the deed was prepared according to what was then understood; that her attorney told her, through the interpreter, that defendant would have to have a quitclaim deed; and that she responded, "That would be all right;" that she was in the kitchen, during all the time the deed was being prepared; that it was handed to Havlicek, who returned it to the witness, saying he could interpret it better; and that the witness read it word for word, and so translated it from the English into the Bohemian language, and he then explained to her how the road ran; that he explained that it was a quitclaim deed, and that, after he had read it over, she inquired of the interpreter whether it was all right to sign it; that her attorney advised her to sign it, and the interpreter gave the same advice, and then signed it as a witness; that her

attorney said defendant would pay the costs in the action then pending, and dismiss it, before she signed the deed, which was communicated to her by Havlicek. Defendant's son confirmed Buresh concerning the reading and explanation of the deed. True, Havlicek testified that he did not understand that the instrument was a deed; but he must have been aware of its contents, from hearing it read. The plaintiff swore that she had to sign the deed, but did not know what she signed; that she did not know whether it was read over to her or not. But she was aware that the attorneys were undertaking to settle the case. She was out in the field over which the way extended, knew that a change was being negotiated, had been advised by her attorney that she "would have to give the road,"—that "they had been using it so long" that she would have "to give it to them,"— and must have known that the instrument signed was to assure defendant of the further enjoyment of the "right to the road that I bought from Clark." She insisted that no one told her. But the road was not segregated in parts. Negotiations were concerning the private way as an entry to defendant's wood lot. She claims to have been afraid; but this is not credible, inasmuch as she was accompanied by her attorney, friend, and daughter, and, moreover, nothing occurred to frighten her. Some question is raised concerning the form of the deed; but, as counsel for appellee concedes that it should be construed as conveying no more than an easement, in the nature of a private way over the land, it is so adjudged, and must have been, under the authorities. The quitclaim deed is not of land, but of a right of way, and this is not of a defined strip, save for a small fraction of the distance; and, if anything passed, it was an easement, in the nature of a private way over her land. See *Low v. Streeter,* 66 N. H. 36 (20 Atl. 247); *Grafton v. Moir,* 130 N. Y. 465 (29 N. E. 974); *Snyder v. Warford,* 11 Mo. 513 (49 Am. Dec. 94); *Peterson v. Machado,* (Cal.) 43 Pac. 611; Jones on Easements, Section 208; *Coburn v. Coxeter,* 51 N. H. 158. We are satisfied that the parties to the transaction acted in good faith, even though the bearing of the lease on the controversy pending at the

time of the settlement may not have been appreciated, and that the plaintiff was not deceived in conveying the right to a private way over her land. The decree is reversed, and the cause remanded, with direction that a decree be entered, dismissing the petition.—*Reversed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.