397 P.2d 877 (1964)
BOARD OF DIRECTORS OF the BAKER METROPOLITAN WATER AND SANITATION DISTRICT, Plaintiff in Error,
v.
Archie CALVARESI, Virginia Calvaresi, Mary Pomponio, Antoinette Pomponio, Rose E. Pomponio and Clyde Pomponio, Defendants in Error.
No. 20508.
Supreme Court of Colorado. En Banc.
December 21, 1964.
Rehearing Denied January 11, 1965.
*878 Tinsley, Alperstein & Frantz, Lakewood, for plaintiff in error.
Kelly O'Neall, Jr., Denver, for defendants in error Archie Calvaresi and Virginia Calvaresi.
George H. Lerg, Alex Stephen Keller, Denver, for defendant in error Mary Pomponio, Antoinette Pomponio, Rose E. Pomponio and Clyde Pomponio.
PRINGLE, Justice.
We will refer to the plaintiff in error as Baker, and to the defendants in error as the Pomponios and the Calvaresis.
The Pomponios and the Calvaresis own adjacent tracts of land in Adams County, Colorado. The Calvaresis' land, which is east of the Pomponios', includes a "panhandle" in the northwest corner, 45 feet wide and 200 feet long. At the time this controversy arose, the Pomponios' land was being mined for gravel under a lease to the Cooley Gravel Company.
In 1961, Baker decided to run a water line across the "panhandle" of the Calvaresis, and across part of the Pomponios' land which had not as yet been mined. The parties were unable to agree on the amount of compensation Baker should pay for the lands taken, and Baker thereupon began two actions in eminent domain. Baker obtained immediate possession and built the water line. The two cases were then consolidated for trial.
The sole issue at the trial was the compensation due from Baker to the land-owners.
*879 The Pomponios contended that they were permanently prevented from removing two acres of gravel because of the pipeline, and that the market value of their property had depreciated as a result. Baker contended that the Kershaw Ditch, an irrigation ditch situated on the Pomponio property in an area in close proximity to the pipeline in question, prevented the removal of the gravel even before the pipeline was laid, and that there was, therefore, no depreciation in value of the Pomponio property as a result of the easement taken and the construction of the pipeline thereunder.
The Calvaresis alleged that their property had lost value because they were prevented from using the "panhandle" as a building site. Baker contended that a zoning regulation prevented use of the "panhandle" for a single family dwelling and that the easement taken through the "panhandle" and the construction of the pipeline thereunder did not result in any depreciation in value to the residue of the land not taken.
The jury rendered a verdict totaling $9000 ($550 for the easement taken and $8450 for damage to the residue) in the Pomponio case, and a verdict totaling $1000 ($650 for the easement taken and $350 for damage to the residue) in the Calvaresi case. From the judgments entered on the two verdicts, Baker brings error.
The points raised by Baker concerning the Pomponios' judgment will be considered first. Russell Chambers testified for the Pomponios that the pipeline prevented the removal of two acres of gravel, because the gravel operation would have to stay 30 feet away from the pipe. He based his conclusion on the assumption that the Kershaw Ditch could be moved, and on Dan Pomponio's testimony that the water line was 24 inch pipe buried 10 feet underground and that the land contained 14 feet of gravel beneath an overburden of four feet of dirt. There was, therefore, evidence in the record from which the jury could find that the construction of the pipeline prevented the removal of the gravel.
Baker argues that the Pomponios did not prove they could have moved the ditch, and that the trial court erred when it refused to instruct that the ditch could not be moved without the consent of the Kershaw Ditch Company. There is ample evidence in the record to indicate that the ditch company had given its consent in 1954 to temporarily move the ditch to its present location, and that it could be put back to its original site without the necessity of new consent. We therefore find that the trial court did not err in refusing to give the instruction in question.
Baker next argues that Dan Pomponio's testimony regarding the depth of the gravel was hearsay, and therefore inadmissible. With this we do not agree. Pomponio stated that he was present when the pipeline was dug, and that he observed Baker put the pipe in. He also stated that he was present when the gravel test holes were dug. It is true that he did not actually measure the depth of the gravel; but Mr. Cooley gave him that measurement at the time it was made and when he was present. Pomponio did, however, observe the measurements being made. Under such circumstances, the judge should exclude, or admit, according to his view of the reasonable reliability of the evidence. McCormick, Evidence, § 10, p. 20. The trial court saw fit to admit Dan Pomponio's testimony, and in this ruling we see no abuse of discretion.
Baker also asserts than Dan Pomponio should not have been allowed to testify to the difference in value between the residue of the land before the construction of the pipeline and after the construction of the pipeline, because he did not qualify as a real estate expert, and because the proof that he was an owner was inadequate. Dan Pomponio testified that he was one of the owners of the land taken, and Baker offered no evidence to refute that. An owner may testify as to his own estimate of value of his own land. Baker Metropolitan Water and Sanitation District v. Baca, 138 *880 Colo. 239, 331 P.2d 511. Moreover, a witness may be sufficiently qualified to testify if he is a resident, landowner or farmer in the neighborhood, and is familiar with the value of the property. Baker Metropolitan Water and Sanitation District v. Baca, supra; Wigmore, Evidence, 2d Ed., p. 714; Orgel, Valuation under Eminent Domain, Vol. 1, § 132. The record shows that Dan Pomponio resided on the land in question and was extremely familiar with its value.
Dan Pomponio was asked on direct examination, "How much less is your property worth since this pipeline was put in?" He answered, "More than $9000." Baker now contends that the answer was not based on the before and after market values, but on the value of the gravel royalties lost because of the pipeline. Nothing in the record indicates he was there referring to anything but the depreciation in market value of the tract. Baker's contention is therefore without merit.
Baker's last argument concerning the Pomponios' land is that the verdict was excessive and not supported by the evidence. Baker contends that the Pomponios put on no evidence of the value of the easement taken, and no competent evidence of any damage to the residue. Our search of the record, however, discloses that the witness Bresnahan testified that the best and highest use of the land was a gravel operation; that the witness Chambers testified to the location of the pipeline easement within the area under the gravel lease, and to the amount of gravel lost by reason of the easement taken and the construction of the pipeline thereunder; that Dan Pomponio testified to the diminution in value of the land resulting from construction of the pipeline; and that the jury viewed the premises. The testimony brought to the jury's attention the elements which were considered by the witnesses in determining the diminution in market value of the residue by reason of the taking, and it was for the jury then to reach its own conclusion as to the proper compensation due the owners because of the taking. Moreover, the jurors here viewed the premises, and in regard to this we have said in Baker Metropolitan Water and Sanitation District v. Baca, supra, 138 Colo. at 242-243, 331 P.2d at 513, that they:
"* * * were better able to judge * * * conditions affecting the land. The facts ascertained by the view of the premises are not in the record, whether they were regarded as so much additional evidence, or were used to better understand and apply the evidence adduced at the trial. * * *"
When, as here, the verdict is supported by substantial evidence, we are bound by it, McGovern v. Board of County Commissioners of Adams County, 115 Colo. 347, 173 P.2d 880, and we may not substitute our judgment of what is reasonable compensation for that entertained by the jury.
We now turn to Baker's arguments against the judgment obtained by the Calvaresis. Over Baker's objection, the trial court permitted the Adams County Building Inspector, Richard Wigham, to testify that he would have issued a building permit upon the portion of the Calvaresi property through which the pipeline now passes. Baker argues that this was, in effect, calling for Wigham's opinion of the meaning of the Adams County Zoning resolution, and was error because the construction of an ordinance is a matter of law for the court.
Baker is correct in its contention that the construction of an ordinance is for the court. In fact, the court did construe the ordinance here against the construction contended for by Baker when it refused Baker's instruction containing its interpretation of the ordinance. Since, under the court's construction of the ordinance, it became Wigham's duty to determine whether a building permit should issue under the physical circumstances presented by the Calvaresi tract before the taking, Wigham's testimony became relevant as showing that there was no obstacle to the use of the "panhandle" as a building site.
*881 Baker's remaining argument, that the award of $350 as damage to the residue of the Calvaresi land is unsupported by the evidence, is not tenable in view of the testimony contained in the record as to the value of the "panhandle" before the taking and as to its utter uselessness after the taking.
The judgment is affirmed.
FRANTZ, J., not participating.