King, J.,
delivered the opinion of the court.
This proceeding was instituted by plaintiff in error to condemn a right of way for a private road across the land of defendants in error. A preliminary order for possession was granted, under which the road was constructed; thereafter a demurrer to the petition was made and sustained, and the cause dismissed. Petitioner below brings the case here for review.
The main questions fairly presented by the record and necessary for determination are:
First. Has the petitioner, in its corporate capacity, the right to condemn land .for a roadway when the same is necessary to the use of the premises owned by it?
Second. May the corporate capacity of the petitioner, and its right to maintain this proceeding, be challenged on the ground that its name does not indicate the business to be carried on by it?
*76 Third. Does the petition state facts sufficient to show that petitioner has the right to take a private roadway across the land of respondents, by condemnation proceedings, as a way of necessity?
The first two questions are of minor importance, but will be disposed of in the order given, as a preliminary to the discussion of matters raised by the third, a correct solution of which involves a construction of a provision of the constitution, and is of great importance not only to the litigants, but to the public generally:
. The petition alleges that petitioner is a corporation, duly organized and existing under the laws of Colorado, and incorporated with certain objects and powers,' among which are the following: To acquire title to certain real estate approximating 1,400 acres, comprising “that huge basin located in the front range of the Rocky Mountains, about two miles from the Town of Manitou, commonly known as Crystal Park, at an elevation of 8,400 feet, world famous for scenic beauty, * * * one of the principal tourist attractions of the Pike’s Peak region to construct private roadways between said park and the public highways leading into the Town of Manitou; to acquire rights of way necessary for the construction of such private roadways ; to acquire automobiles and other vehicles, and maintain and operate the same over the private roadways of the company, and over the public highways, for the purpose of transporting, for hire, passengers, baggage, freight and express between the Crystal Park and other points in the state, particularly the Town of Manitou, and other towns in the County of El Paso. It further alleges that pursuant to its purposes and powers, it had acquired said real estate, and caused to .be surveyed and constructed over the only possible, practicable and feasible route a private road leading from the public highway known as Manitou Avenue to Crystal Park, at a cost of over $100,000, and that the road as so surveyed, laid out and constructed, ■ runs over *77 and across the premises of respondents; that the land in the park is at a high elevation, surrounded by lands of the United States, and other persons, including respondents; that there is no public road, highway or private way leading to or touching said park, and that because of natural conditions stated in the petition the only possible, feasible and practicable way to gain access to Crystal Park from any public road or highway is through a natural gateway leading between gigantic rocks and over land belonging to respondents; that respondents’ land lies contiguous to and between lands owned by petitioner; that it is absolutely necessary to acquire the land of respondents sought to be condemned as a right of way of necessity, for the purpose of establishing and maintaining its roadway; that the damage to respondents will not exceed $100; that under and by virtue of section 14 of article II of the state constitution petitioner is vested with a private way of necessity over said lands. Other appropriate allegations, as required by the eminent domain act, are made.
1.. The laws of the state provide that corporations may be formed for any lawful purpose, and when so formed they become “bodies corporate and politic in fact and in name;” they are legal entities, artificial persons, and in the transaction of the business for which incorporated, and within the powers conferred by the general laws under which incorporated have and may exercise the same rights that natural persons may exercise. The language of the statute is, “they may have and exercise all the powers necessary and requisite to carry into effect the objects for which they may be formed, as named in their certificate of incorporation.” It is our opinion that a private corporation may condemn land for a private way of necessity where the nature of its business and the situation of its property require the wáy, and where, under like conditions, other persons not corporate may condemn. Moreover, one of the principal objects for which the company was formed is to *78 construct a road and operate over the same, and without which the other objects for which incorporated, all being parts of one general and lawful business, cannot be transacted; therefore, prima facie, petitioner is within the provisions of section 2461 E. S. ’08, which expressly confer upon “any corporation formed for the purpose of constructing a road,” etc., the right of eminent domain for the purpose of acquiring the necessary easement or right of way therefor. Unless we give to the aforesaid section a more restricted meaning than its language imports, or conclude that, as applied to petitioner, under the facts here pleaded, the statute is in conflict with the constitution, the petitioner must be held to have the right of eminent domain, by virtue of the express provisions of that section of the statute.
2. It seems to be settled law that a charter or articles of incorporation is not the subject of attack in a collateral proceeding, though the objection thereto may ‘be taken advantage of by quo warranto. U. P. R. R. Co. v. Colo. Postal T.-C. Co., 30 Colo., 133, 69 Pac., 564, 97 Am. St., 106; Detroit & T. S. R. R. Co. v. Campbell, 140 Mich., 384, 103 N. W., 856; Connolly v. Woods, 13 Idaho, 591, 92 Pac., 573. Furthermore, even though the defect alleged be conceded, petitioner would still be a de facto corporation. A de facto corporation may exercise the power of eminent domain. Thompson, Corp., vol. 1, p. 257.
3. Does the petition show that petitioner is entitled to maintain this proceeding?
From the averments of the petition it is made to appear that petitioner is a private corporation, organized for the purpose of carrying on an enterprise for its own special advantage, and while it is argued that the use to be made of the property is quasi public, in the sense that the public will be greatly benefited thereby, no claim is made that the company is a public corporation, or the road for public use, except as the public may use it, as the passengers of petitioner, for hire. The right to the roadway sought to be *79 acquired is asserted on the ground that it is a private way of necessity within the contemplation of the provisions of the constitution and general laws.
Section 14 of article II of the constitution provides:
“That private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes.”
The statute on eminent domain also provides that under the provisions of that act private property may be taken for private use for private ways of necessity. Section 15 of said article II provides that private property shall not be taken or damaged for public or private use without just compensation.
The main questions presented for consideration on the sufficiency of the petition are (1) whether the roadway under consideration is a private way of necessity within the meaning of those words as used in the constitution, and (2) whether, if found to be a way of necessity, it must also be found to be for use for agricultural, mining, milling, domestic or sanitary purposes.
At the time of the adoption of our constitution the phrase “ways of necessity” had a technical and limited meaning at common law, and respondents contend that it is so used in the constitution. If this contention is sustained, petitioner has no cause of action. The common-law way of necessity is an easement founded upon an implied grant; it is an application of the principle that where one party conveys property, he also conveys whatever is necessary to the beneficial use of that property. It arises only in favor of the grantee over land of his grantor, and not over the lands of a stranger. Kimball v. Cochecho R. R. Co., 27 N. H., 448, 59 Am. Dec., 387; Pomfret v. Ricroft (1666), 1 Saun., 320, 323, note 6 (m). The necessity for the way does not in any case create the right, as it always originates in some *80 grant or change of ownership. Jones, Easements, sec. 303; Toothe v. Bryce, 50 N. J. Eq., 589, 595, 25 Atl., 182; Woodworth v. Raymond, 51 Conn., 70, 75. But it is obvious that the taking of such a way by the grantee over the lands of the .grantor would not be a taking of private property of the grantor; nor without the consent of the grantor as owner of the servient estate, for such consent is conclusively presumed from the grant of the dominant estate; nor would it require the payment of compensation to him. Such being the limited meaning of “way of necessity” at common law, it is impossible for us, and, wé think, unreasonable, to conclude that the framers of the constitution had in contemplation that character of a way only, or used those words in the limited sense contended for instead of according to. their ordinary and natural import. Section 14 is a general inhibition against taking private property for private use without the consent of the owner, but with certain exceptions. The exceptions are constitutional grants of rights and powers not theretofore existing, namely, the right to take private property for private use, without the consent of the owner, in the instances therein enumerated. Lamborn v. Bell, 18 Colo., 346, 349, 32 Pac., 989, 20 L. R. A., 241. If the exception in question has reference to the common-law way of necessity, it is not a grant of any right or power, for that right, arising from a private grant, had been recognized for more than two hundred years before the adoption of the constitution; nor would it be a reservation from the general inhibition against taking private property without consent of the owner, because, as has been said, the common-law way exists only by consent of the owner of the servient estate. Furthermore, to rule that the way of necessity granted by said section is the common-law way, and at the same time limited by the words “for agricultural, mining, milling,” etc., “purposes,” as contended for by respondents, would admit a still grosser absurdity, as that is equivalent to holding that a way arising from a *81 grant — in other words, with the consent of the owner of the servient estate — cannot be taken, except such way be for agricultural, mining, milling, etc., purposes.
Our conclusion is that the private ways of necessity granted by the constitution differ from public ways of necessity only in the fact that they are private, and refer particularly to and include passageways or roadways necessary in the sense that they are indispensable to the practical use of the property for which they are claimed; and, further, that such private ways of necessity are there considered and provided for as a character of easement, separate and distinct from those for reservoirs, drains, flumes or ditches,, and which was not, as were the latter, limited in use to easements for agricultural, mining, milling, domestic or sanitary purposes. Such is the natural import of the language used.
Our conclusion is strengthened by the following pertinent facts: Prior to the adoption of our constitution the same provision as to private ways of necessity and drains and ditches for agricultural and mining purposes was contained in, and only in, the constitution of the state of Missouri. The official report of the proceedings of the convention that framed the constitution of Colorado furnishes abundant and conclusive proof that sections 20 and 21 of article II of the constitution of Missouri were copied verbatim into the drafts to be considered by the Colorado convention, and that after full consideration those, sections, changed only in mode of expression, and so as to avoid duplication of provisions, and by the addition of the word “reservoir” and of the words “mining, milling, domestic,” became and are sections 14 and 15 of article II of our constitution. For that reason the construction given to those-, sections by the courts of Missouri is persuasive,, if not controlling, in construing our own fundamental law; and, as: will be hereafter shown, that state has always recognized! as a private way of necessity a passageway or roadway over *82 land of a stranger to the claimant’s title, arising from necessity, without the element of an implied grant; and the same ruling in that respect obtains since the constitution as before. In other words, in Missouri a private way of necessity was and is recognized both as at common law arising from grant, and differing from the common law as arising from necessity. The proceedings of the constitutional convention aforesaid further show that an unavailing effort was made to insert the word “necessary” as a qualification before the words “drains, ditches,” etc.; and another, with like result, to add the words “whenever necessary for such purposes” after the words “agricultural,” etc., “purposes,” as now found in section 14. This shows that the writers of the constitution attached the limitation of necessity to the taking of private property for private roadways, while at the same time they refused to so limit the taking for reservoirs, ditches, etc. A comparison of our territorial laws with sections 2461 and 5851, infra, of our present statutes which were enacted by the first general assembly in 1876-1877, and in force ever since, shows that the sections named are substantially the same as the territorial' statutes. Moreover, the first general assembly of the state, convened a few months after the adoption of our constitution, for the purpose of making laws, was composed in part of the same men who framed the constitution. It is fair to assume that they knew what they meant when they drafted said section of the constitution, and that when they immediately enacted the same, or similar, provisions as theretofore existed with regard to certain ways of necessity not as at common law, and the right of a corporation organized to construct a road, bridge, etc., to take property by condemnation when necessary for that purpose, they did not intend to contravene the provisions of the fundamental law which they had so recently written, and which must have been fresh in their minds.
*83 A constitutional provision was adopted by the state of Washington in 1889, the pertinent portion of which reads as follows:
“Sec. 16. Private propérty shall not be taken for private use, except for private ways of necessity, and for drains, flumes or ditches on or across the lands of others for agricultural, domestic or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation,” etc.
In Long v. Billings, 7 Wash., 267, 269, 34 Pac., 936, the court, having under consideration the words “private (ways of necessity,” as used in said constitution, upon a condemnation proceeding by the lessees of land to be used as a stone quarry, for right of way across a tract of land belonging to another, said:
“The allegations show a practical necessity for a way across the particular tract of land. The right to a way of necessity arose at common law when the owner sold land to another which was cut off from necessary access to a highway, by other land owned by the grantor. In such a case the purchaser’s right was to have a way designated without any compensation to the owner. But when the purchaser found himself thus cut off by lands not the property of his grantor, his remedy was by means of a public road only; and this public road could be opened only through the proper authorities having such matters within their jurisdiction, through condemnation proceedings, since private lands could not be taken for merely private purposes. In our constitution, however, there is authority for the taking of lands for ‘private ways of necessity’ (art. 1, sec. 16), and it is of this authority that appellant sought to take advantage.”
But the court held that before the proceeding could be maintained, the legislature must define what are to be private ways of necessity, authorize persons to apply for them, and prescribe the method by which the necessary land is to *84 be taken. Subsequent to that decision, and' doubtless to conform'thereto, the legislature of that state provided that “the owner or owners of any lands which do not abut on any highway, but which are so" situated that it is necessary to cross the land of others to obtain a reasonable way to any public highway, may obtain the location and establishment of a road between his or their said lands and the highway' by proceeding in the superior court,” etc. Laws ’95, sec. 1, p. 180.
In confirmation of our statement that section 14 of article II of our constitution is the same in meaning as the constitution of Missouri, we quote a pertinent part of section 20 of article II of that instrument:
“Sec. 20. That no private property can be taken for private use with or without compensation, unless by the consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes in such manner as may be prescribed by law.”
That section of the constitution has been construed and applied in Cox v. Tipton, 18 Mo. App. 450; Barr v. Flynn, 20 id., 383; Chandler v. Reading, 129 id., 63, 107 S. W., 1039. Each of those cases was'a condemnation proceeding for a private road leading from plaintiff’s land over the. lands of defendants to a public road, upon a statute in part as follows:
“If any inhabitant of this state shall present a petition to the county court of the proper county» setting forth that he or she is the owner of a tract of land in such county, or in an adjoining county, and that no public road passes through or touches it, and asking for the establishment of a private road from his or her premises to connect with some public road,” etc., the court shall lay out the road. In all of these cases the court sustained the roads as private ways of necessity under the constitution. See also Snyder v. Warford, 11 Mo., 513, 49 Am. Dec., 94, and Chattanooga *85 R. & S. Co. v. Philpot, 112 Ga., 153, 37 S. E., 181, under a provision using the words “in cases of necessity private ways may be granted.” Those statutes and cases show that the constitutional provision was construed by legislatures and courts to have reference to ways that were granted because they were ways without which the land holder would have no access to public roads — in other words; in which the right existed because of necessity, and not by reason of an implied grant. It will be observed also that the foregoing statutory provisions make no distinction on account of the character of the business transacted or carried on upon the lands which do not abut upon a highway. Many decisions, seeming to oppose the views we are announcing, can be cited, but, with one exception, in states whose constitution's contain no such provisions as are found in the constitution of Colorado and of Missouri. We are aware that in Healy Lbr. Co. v. Morris, 33 Wash., 490, 74 Pac. 681, 63 L. R. A., 820, 99 Am. St., 964, a constitutional provision the same as ours as to taking private property for private ways of necessity was construed to have reference to the common-law way of necessity; but we are unable to give our approval to that construction. Again, there are decisions Of courts under constitutions which neither have a particular limitation on or grant of right to take private property for private use, and upon statutes relative to ways of necessity, which do not recognize the limitations contained in the common-law definition. Lyon v. Hamor, 73 Me., 56; Klicker v. Gilbaud, 47 N. J. L., 277; In re Killbuck Private Road, 77 Pa. St., 39; State v. Stackhouse, 14 So. Car., 417; Dickey v. Tennison, 27 Mo., 373. In the case last cited, decided before the adoption of the constitution of that state, in speaking of a statute providing for a way of necessity, it was said, “Its very purpose is to secure a right of way to parties walled in by the land of others,” and
“That act contemplates nothing more than the regulation- of the exercise of . a right which existed without any *86 statute, a right of way of necessity which every man enjoyed who owned lands surrounded by the land of others.”
Since the adoption of our constitution the general assembly has enacted certain statutes which seem to be a legislative declaration that under the conditions mentioned therein private ways of necessity as contemplated by the constitution exist. We cite sections 5851, 2416, 2461, 2462 and 2464 R. S. ’08. These also have a bearing on the contention that the private ways of necessity mentioned in the constitutional provision quoted, and- in the eminent domain act, have reference only to ways of necessity for agricultural, mining, milling, domestic or sanitary purposes. Section 5851 provides for the laying out of a private wagon road from the dwelling of any person to a public road, and for condemning the land necessary therefor. Section 2461 provides that “if any corporation formed for the purpose of constructing a road, pipe line, bridge, ferry, * * *” etc., “shall be unable to agree with the owner for the purchase of any real estate or right of way or easement or other right necessary or required for the purpose of any such corporation, for transacting its business, * * * may acquire title to such real estate or right of way or easement or other right in the manner provided by law for the condemnation of real estate for right of way * * We think that the legislature, in enacting that section, did not have in contemplation a road used only in connection with the pursuit of agriculture, mining, milling or manufacture, nor a public road; nor do we think it should be so construed, but should be given the interpretation which its language conveys, according to its ordinary and natural import (Sedgwick, Stat. Const., p. 220), namely, a road to be used for purposes for which such utilities are ordinarily used when constructed by private corporations or persons, and that the ’ necessary implication from such statute is that the general assembly regarded a way necessary for the construction of such road, or to connect several parts of *87 it, a way of necessity.
It may be said that we have no statutory provisions similar to those quoted from the statutes of Missouri and Washington, specifically providing for rights of way by which access may be given to “landlocked” premises. We think the right does not depend exclusively on the statute. In Lamborn v. Bell, supra, it is ruled that the constitution, in express terms, confers the right to take private property for the uses therein enumerated, and grants the right as effectually as if expressed in an act of the legislature, and can be enforced when such grant is supplemented by an act of the legislature providing the means for its exercise; that the constitution is self-executing so far as it pertains to the grant. The legislature has provided the procedure. Under the foregoing rule we think the courts may determine what constitutes a private way of necessity in any particular case, unless restricted by the legislature.
Giving the averments of the petition a reasonable construction, there is no doubt that they disclose an absolute, practical necessity for a way over respondents’ land, either for the purpose of connecting petitioner’s land with the public highway, or for the construction, operation and maintenance of the private road which was one of the principal purposes for which petitioner was incorporated.
We have already said that under our statutes, as we construe them, a private corporation formed for the purpose of carrying on a lawful business has all the rights, powers and privileges of a natural person engaged in the same business. We perceive no reason for any distinction. Under the allegations of this petition, we believe it is clear that a natural person owning Crystal Park and using or intending to use it for the purpose for which it is alleged to be the most valuable, namely, as a place of great scenic attraction, would have the right to a private way of necessity by which he could in a reasonable and practical way have access to and utilize the said lands, and if unable to *88 agree with the respondents, would have the right to condemn an easement for such right of way. It also seems that petitioner, as a corporation for the purpose of constructing a road, is by virtue of the statute entitled to a practical way over respondents’ land as a private way of necessity to connect the parts of the road on either side of said land, all allegations of the petition well pleaded being, for the purpose of the demurrer, admitted to be true. The damage to respondents is trivial; the benefit to the petitioner afid to the public is great.
Whether the necessity for a way of any character across respondents’ land does in fact exist; or for the particular way asked for, and other matters that may be made issues of fact in condemnation proceedings, will, of course, depend on evidence to be adduced.
There is no argument, and, we therefore assume, no contention, that a parol license to construct the road was given, although averments of that nature are contained in •the petition, and estoppel is pleaded. Nor is the question of the unconstitutionality of any section of the statutes argued, although possibly involved; therefore, we do not feel called upon to decide those questions.
The judgment is reversed, and the cause remanded for further proceedings in conformity with the views herein expressed.

Reversed and remanded.