**BEAR CREEK DEVELOPMENT CORPORATION, a Colorado corporation, Petitioner–Appellee,**

v.

**The GENESEE FOUNDATION, a Colorado non-profit corporation, Respondent–Appellant.**

No. 93CA1873.

Colorado Court of Appeals, Division IV.

May 30, 1996.

Law Office of Edward A. Walters, P.C., Edward A. Walters, Wheat Ridge, for Petitioner–Appellee.

Tilly & Graves, P.C., David D. Schlachter, Denver, for Respondent–Appellant.

Opinion by Judge DAVIDSON.

In this condemnation action, petitioner, the Genesee Foundation, a non-profit corporation (condemnee), appeals from a decree of condemnation granting respondent, Bear Creek Development Corporation (condemnor) possession of a perpetual way of necessity, establishing the value of the property taken, and awarding costs. We affirm in part, reverse in part, and remand.

In September 1991, condemnor filed a petition for condemnation under Colo. Const. art. II, § 14 and § 38–1–102(3), C.R.S. (1982 Repl.Vol. 16A), to condemn private property for use as a private way of necessity from its landlocked quarter section of land across two parcels of land, including one owned by condemnee (parcel D). Parcel D, traversed by a 12–foot wide paved private road, currently serves as access to eight houses within the Genesee planned unit development (PUD).

Both landowners challenged the action, asserting that access through their properties was unnecessary because alternative routes, including a route through the "Jones property," were available to condemnor. Following a bench trial, the court entered a judgment finding that condemnor had established the need for a private way of necessity and granted condemnor a perpetual, 50–foot wide, non-exclusive way of necessity for ingress and egress over and across parcel D.

After receiving a Commissioners' Certificate of Ascertainment and Assessment Report regarding the valuation of the taking, the trial court ordered condemnor to pay $36,800 for the property and approximately $4,680 in costs. Condemnee appeals the condemnation, the valuation, and the award of costs. The other property owner accepted condemnor's offer of compensation and is not party to this appeal.

## I.

Condemnee first asserts that the trial court erred in granting condemnor a way of necessity over parcel D. Condemnee does not dispute that condemnor requires access but, instead, contends that condemnor has access by an alternate route. We disagree.

Colo. Const. art. II, § 14 provides that: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity...."

For condemnation of a way of necessity to be justified, the "necessity" need not be absolute, but rather the way must be "reasonably necessary under the facts and circumstances of the case." *West v. Hinksmon*, 857 P.2d 483, 487 (Colo.App.1992). Consequently, when, as here, a potential condemnee asserts existence of an alternate private access route across another's property to defeat condemnation of its property, the potential condemnee has the burden of establishing (1) existence of an "acceptable alternate route," and (2) that the condemnor has the *"present* enforceable legal right to use it." *West v. Hinksmon, supra*, 857 P.2d at 487 (emphasis added).

An alternative route is not acceptable if it is impractical, unreasonable, or prohibited by cost grossly in excess of the value of the dominant estate. *West v. Hinksmon, supra; see Le Satz v. Deshotels*, 757 P.2d 1090 (Colo.App.1988) (what is reasonable is a question for the court to determine in each case).

Whether condemnor has an enforceable right to use an alternative route depends on the type of right or easement available to it. *See Billington v. Yust*, 789 P.2d 196 (Colo.App.1989) (right to common law easement by necessity for a different route defeats way of necessity under constitution).

Here, condemnee argues that condemnor had a right to use an acceptable alternative route that condemnee had offered to sell to condemnor. We disagree.

The record reveals that Genesee Land Company (GLC) conveyed property to an individual (Jones) in 1971 with a deed which reserved a "perpetual vehicular and pedestrian access easement"—the Jones property route from condemnor's property to a public road. In December 1991, after the petition for condemnation was initiated, GLC granted condemnee an option to purchase the easement at 75 percent of fair market value. Condemnee's option provided for conveyance by GLC by quitclaim deed "with no warranties or representations of any kind or nature." Condemnee, in turn, offered to sell the right to use this non-exclusive easement to condemnor at fair market value.

■ Simply having been offered an option to buy this easement, however, does not vest condemnor with a *"present* enforceable right to use" the route. Even if we assume, *arguendo,* that GLC had a valid, enforceable, and transferable easement over the Jones property to offer, such an offer does not itself create an enforceable right of use in the offeree; the offer is revocable until accepted. *See Brown v. McAnally,* 97 Wash.2d 360, 644 P.2d 1153 (1982) (permissive use of roadway does not establish legally enforceable right sufficient to defeat way of necessity). Even a lease agreement for access is an insufficient right of use to preclude condemnation of a way of necessity. *See Bear Creek Development Corp. v. Dyer,* 790 P.2d 897 (Colo.App. 1990). And, here, there is no contention that condemnor accepted condemnee's offer or otherwise acquired the easement.

Moreover, condemnee, the offeror here, did not itself have an interest in the property at the time of its offer. *See Columbia Savings & Loan Ass'n v. Counce,* 167 Colo. 365, 447 P.2d 977 (1968) (option to purchase property only ripens into mutually enforceable contract when option is exercised; when option is not exercised, party gains neither legal nor equitable ownership by equitable conversion); *see also Temple Hoyne Buell Foundation v. Holland & Hart,* 851 P.2d 192 (Colo.App.1992) (option to purchase may or may not create an enforceable interest in the property).

Furthermore, condemnor was at most an incidental third-party beneficiary to the op-

tion contract and, consequently, lacks standing to exercise the option. *See Restatement (First) of Contracts* § 133 (1932) (incidental third party beneficiary); *see also In re Application for Water Rights of Grand Junction v. Kannah Creek Water Users Ass'n,* 192 Colo. 279, 557 P.2d 1169 (1976). Thus, condemnee has not proven that the condemnor had a present enforceable right to use the alternate Jones property route, and therefore, we need not address whether the alternative route suggested by condemnee was reasonable.

## II.

Next, condemnee contends that, even if condemnor is entitled to a way of necessity, the trial court nevertheless erred in failing to restrict the width, character, and duration of the right of way. Specifically, condemnee asserts that the width and character of the right of way should provide solely for existing and historic uses of condemnor's property, and not accommodate future residential development. In addition, condemnee asserts that any way of necessity should terminate if and when another route is procured to access the land. We agree with condemnee that the way of necessity should be restricted.

In its order, the trial court found only that "[g]iven the present zoning and permitted uses of [condemnor's] property, vehicular traffic to and from [the] property would be infrequent and sporadic" and that the impact on condemnee would be negligible. The court granted a 50-foot wide, non-exclusive way of necessity for ingress and egress over parcel D, free of all rights of reversion, and denied condemnee's motion to amend its order to restrict construction.

## A.

First, while we disagree with condemnee that the width and character of the way must be restricted to that which would accommodate only historic and existing uses, we agree that the court erred in failing to restrict use of the way.

### 1.

■ The opinion in *Crystal Park Co. v. Morton*, 27 Colo.App. 74, 146 P. 566 (1915) suggests that potential uses may be the basis for a condemnation action for a way of necessity. While it is not clear from the opinion whether the proposed use at issue was also an historic or existing use of the landlocked property, the court stated that:

> [I]t is clear that a natural person, owning [the landlocked property] and *using or intending to use it* for the purpose for which it is alleged to be the most valuable ... would have the right to a private way of necessity by which he could, in a reasonable and practical way, have access to and utilize the said lands.

*Crystal Park Co. v. Morton, supra,* 27 Colo. App. at 87, 146 P. at 571 (emphasis added).

Furthermore, a comparison of the common law easement by necessity and the constitutional way of necessity supports the court's suggestion that the way of necessity should accommodate certain future uses.

■ While the common law easement and way of necessity must be differentiated, *see State Department of Highways v. Denver & Rio Grande Western R.R. Co.,* 789 P.2d 1088, 1092 (Colo.1990) (way of necessity "exists where the common law or other remedies do not provide a basis of access"), they both depend on a finding of necessity. They differ, however, in that the common law easement is fixed in the past by the intent of the grantor, while the constitutional way of necessity only "exists because of necessity and not by reason of an implied grant." *State Department of Highways v. Denver & Rio Grande Western R.R. Co., supra,* 789 P.2d at 1092.

■ However, despite the fact that the extent of the common law easement is fixed by the intent of the grantor at the time of conveyance, it nonetheless can accommodate reasonable new uses. *See Thompson v. Whinnery,* 895 P.2d 537, 541 (Colo.1995) (conveyance may include not only historic and existing uses, but also "uses the parties reasonably might have expected based on normal development"). Because a constitutional way of necessity is not even limited by the intent of the grantor, it too should accommodate future uses when a condemnor can establish that the way is necessary for these reasonable uses.

### 2.

■ The extent to which the way of necessity may be developed to accommodate future expected uses by condemnor is restricted only by the constitutional requirement of necessity. *See Mortensen v. Mortensen,* 135 Colo. 167, 309 P.2d 197 (1957) (court may inquire whether the property is necessary for the intended purpose, but neither the court nor the commissioners may inquire whether the proposed enterprise for which access is desired is either feasible or practical); *Pine Martin Mining Co. v. Empire Zinc Co.,* 90 Colo. 529, 11 P.2d 221 (1932).

■ Nonetheless, this restriction is significant. The way of necessity is a "remedy of last resort" and the exceptions which allow a taking for private use must be interpreted narrowly with any uncertainty resolved against the one asserting the right to condemn. *See State Department of Highways v. Denver & Rio Grande Western R.R. Co., supra,* 789 P.2d at 1091. The constitutional authorization is intended only to allow landowners to access and use the lands in a reasonable and practical way; constitutional ways are necessary in the sense that they are "*indispensable* to the practical use of the property for which they are claimed." *Crystal Park Co. v. Morton, supra,* 27 Colo.App. at 81, 146 P. at 569 (emphasis added).

Further, an "owner of landlocked property is only authorized to condemn land for his or her own needs and use, and is not authorized to condemn land for another or some other use." *State Department of Highways v. Denver & Rio Grande Western R.R. Co., supra,* 789 P.2d at 1093; *see Brown v. McAnally, supra* (landlocked property owner cannot condemn a private way in order to transfer it to the county for use as a public road in order to develop a subdivision).

■ Here, the land is currently zoned A–2 agricultural, allowing agricultural activities, certain commercial utility uses, and, of par-

ticular interest here, residential development at a density of one house per ten acres. Accordingly, the way of necessity over parcel D must be limited to provide access for all historic and existing uses, i.e., grazing, hunting, and woodcutting, as well as reasonably expected uses, measured by the current zoning of the property and any other relevant considerations. *See West v. Hinksmon, supra* (necessity depends on circumstances of the case).

■ Further, when, as here, the condemned right is in the nature of an easement, rather than for a fee simple interest, not only the *extent* of the easement, i.e., 50 feet wide, but the *"scope of a condemnor's use* of the easement is limited to the extent reasonably necessary for the purpose served by the taking, so that the landowner's right to use the easement area is as great as reasonably possible consistent with the purpose of the taking." 3 J. Sackman, *Nichols on Eminent Domain* § 9.03[3][c] (3d ed. 1994) (emphasis added).

Here, condemnee argues that the existing 12-foot wide paved private road is sufficient to serve the needs of condemnor. Further, it contends, widening the roadway to two lanes, as condemnor proposed, would unnecessarily diminish condemnee's current use of part of the easement on parcel D as open space.

■ Because the scope of the condemned right can be limited so as to achieve its purpose most effectively, *State Department of Highways v. Denver & Rio Grande Western R.R. Co., supra,* and disputes which arise as to its scope are resolved, in part, by reference to the court's order of condemnation, a court must clearly define the extent of the easement, at the request of the condemnee, in order to avoid inevitable litigation over a vague condemnation order. *See* 3 J. Sackman, *Nichols on Eminent Domain* § 9.05 (3d ed. 1994) (when condemnor subjects the property to uses not described in the taking, the landowner may sue for damages and just compensation); *see also Docheff v. Broomfield,* 623 P.2d 69 (Colo.App. 1980) (finding continuing trespass when manner or quantity of water flow exceeds previous level of damage which established drainage easement); *Shrull v. Rapasardi,* 33 Colo.

App. 148, 517 P.2d 860 (1973) (court properly limited dimensions of ditch and manner of maintenance after easement established).

Furthermore, the eminent domain statute requires that the condemnation petition describe in detail the nature of the use to be made of the land so that the burden on the landowner can be accurately evaluated. *See* § 38–1–102, C.R.S. (1982 Repl.Vol. 16A); *State Department of Highways v. Woolley,* 696 P.2d 828 (Colo.App.1984); 6 J. Sackman, *Nichols on Eminent Domain* § 26.112 (3d. ed.1995).

The trial court's order here does not reflect these considerations.

■ Consequently, and with particular regard to its findings that vehicular traffic from condemnor's property will be infrequent and the impact on condemnee negligible, the trial court must make further findings on the character of a way for ingress and egress which would be "indispensable" for use of the property for both the historic and existing uses and for what additional improvements are indispensable for any reasonably expected use of the property as limited under its current zoning designation. *Cf. Board of County Commissioners v. Ogburn,* 38 Colo. App. 212, 554 P.2d 700 (1976) (since passageways by prescription are confined to the extent of actual adverse use, court order should specifically define extent to avoid future litigation); *see also De Reus v. Peck,* 114 Colo. 107, 162 P.2d 404 (1945).

### B.

Condemnee also argues, and at oral argument condemnor did not contend otherwise, the way of necessity must terminate if and when another route is procured to access the land. We agree.

■ Condemnation passes only such estate or interest as is required to accomplish the purpose of the condemnation. When a mere easement or terminable fee is granted, the land reverts when condemnor ceases to use the grant for the purposes specified. *See Lithgow v. Pearson,* 25 Colo.App. 70, 135 P. 759 (1913).

Since the way of necessity should be interpreted narrowly because it interferes with another's enjoyment of his or her property, *see State Department of Highways v. Denver & Rio Grande Western R.R. Co., supra,* the way of necessity should not last any longer than would the comparable common law easement by necessity, or any other easement granted for a specific purpose.

At common law, easements by necessity are terminable upon a change of circumstances. *See Proper v. Greager,* 827 P.2d 591 (Colo.App.1992) (common law easement by necessity lasts only as long as the necessity continues). Because both the way and easement by necessity are based on a finding of necessity, the way of necessity should also terminate upon a change of circumstances that eliminates the necessity. *Cf. Sentell v. Williamson County,* 801 S.W.2d 220 (Tex.App.1990) (termination clause in express easement analogous to easement by necessity).

Moreover, reversion to the condemnee is not unjustified simply because condemnor has paid value for the way. The power to take by eminent domain is qualified and the title taken must also be qualified. This fundamental principle cannot be "destroyed by the mere fact that constitutions and statutes may require the condemnor to pay full value for the thing taken," *Lithgow v. Pearson, supra,* 25 Colo.App. at 82, 135 P. at 763, although the amount to be paid presumably will reflect the qualification in title.

Consequently, since the constitutional way of necessity is based solely on the need for access, it may not be exploited merely to establish the first of several access routes to landlocked property. Thus, the easement granted to condemnor should reflect the potential for termination of the way of necessity if and when another access route is established to serve the property interests that exist at that time. *See Crystal Park Co. v. Morton, supra; cf. Smith v. Wright,* 161 Colo. 576, 424 P.2d 384 (1967) (cessation of the primary purpose for which an easement was granted does not terminate the easement when it is not shown that such purpose was the sole purpose of the grant).

### III.

Finally, condemnee argues that the trial court erred in its determination of compensation for the condemnation by failing to consider evidence and award damages for all residual property, and by failing to award costs for condemnee's expert witnesses. Because we remand to the trial court for further findings on the extent, character, and duration of the easement, the commissioners must necessarily reevaluate the amount of compensation to be awarded. Since issues related to the admission of evidence and calculation of damages may arise again, we address them here.

### A.

First, condemnee argues that the trial court erred in not instructing the commissioners that residual damages include both diminution in value of all parcels within the Genesee development, as well as the present value of future development of all parcels. Condemnor argues that all parcels must be included in the residue because all PUD property owners form condemnee, the Genesee Foundation—the homeowners' association for the development—which owns parcel D as part of the common open space of the Genesee PUD. We disagree.

When a portion of a landowner's property is taken, just compensation includes payment for the portion actually taken and damages for injury to the remainder of the property. *See* § 38–1–114(1), C.R.S. (1995 Cum.Supp.).

The proper measure of compensation for damage to the remainder is the reduction in market value of the remaining property, with compensation measured either at the time the petitioner is authorized to take possession or at the date of the proceeding in which compensation is assessed. *Colorado Mountain Properties, Inc. v. Heineman,* 860 P.2d 1388 (Colo.App.1993).

Both contiguous and non-contiguous property of the condemnee may be treated as residue if the property is considered part of a single unit of operation with the taken property. *See Board of County Commissioners*

*v. Noble,* 117 Colo. 77, 184 P.2d 142 (1947); *Board of County Commissioners v. Delaney,* 41 Colo.App. 548, 592 P.2d 1338 (1978).

Apart from a situation, not at issue here, in which access to property is impaired by a condemnor's disturbance of adjacent property, *see State Department of Highways v. Davis,* 626 P.2d 661 (Colo.1981), Colorado courts have not decided to what extent, if any, an individual may recover for "residual" damage due to a taking of a neighbor's property when none of the individual's property is actually taken. However, in *dicta* in *La Plata Electric Ass'n v. Cummins,* 728 P.2d 696, 701–02 (Colo.1986), the supreme court suggests the need to limit residual damage awards to persons who have property actually taken, stating:

> [P]roperty owners may be entitled to only those damages to the remainder that are attributable to the use of or activity on the land that has been taken from them and not to damages resulting from the use of adjoining lands for the same project....

The court's rationale for limiting residual damage awards to the owners of property actually taken is that:

> [A]bsent recognized and narrowly defined legal wrongs, such as nuisance, a landowner has no legal right and therefore no expectation to control or limit activities on lands other than his own.

*La Plata Electric Ass'n v. Cummins, supra* (fn.4).

■ Applied here, this rationale limits residual damages to property owned by condemnee, *i.e.,* the common areas of the PUD, excluding from the residue both properties adjacent to parcel D and all other privately held properties in the PUD.

Furthermore, we disagree with condemnee that the principle of treating as residue all of a condemnee's property used as a "single unit of operation" with the taken land, established in *Board of County Commissioners v. Noble, supra,* should be extended under the circumstances here to properties held by several landowners.

First, all of the property of the Genesee PUD is "one economic unit" only to the extent that it is governed by a set of cove-

nants established by the articles of incorporation and bylaws of the foundation. While the Genesee PUD covenants provide that all PUD property owners can use and possess the common areas, private covenants resolve the rights and duties among the residents of a PUD, but do no less nor more than traditional covenants. *See* 4A R. Powell & P. Rohan, *Powell on Real Property* ¶ 630.10[4] at 53B–40 (1995). Thus, they do not create any additional rights in the condemnee, the foundation, or homeowners as against a condemnor.

Furthermore, even the Genesee PUD covenants recognize that all of the properties within the development are not, as condemnee contends, "one economic unit." Specifically, while common areas of the Genesee PUD are maintained for the common benefit and through fee assessments on all of the member homeowners, individual properties are privately held and maintained. Under the covenants, any maintenance of private properties by condemnee is done at the expense of the individual property owner.

In addition, the foundation is a non-profit corporation, a separate entity under Colorado law. The private assets of shareholders are neither subject to the debts of the corporation, nor is individually held property affected by corporate dealings. *See* §§ 7–40–101, et seq., C.R.S. (1986 Repl.Vol. 3A) and 7–106–203, C.R.S. (1995 Cum.Supp.).

A primary reason for homeowners' associations to incorporate, as here, is to insulate both the individual homeowners and the association from the other entity. Neither entity is responsible for liabilities and judgments against the other unless courts find a basis for piercing the corporate veil.

Further, problems of allocating condemnation and insurance awards can be minimized with a homeowners' association since homeowners carry separate casualty insurance policies and a particular owner whose property is condemned will be exclusively entitled to the award. *See generally,* Schreiber, *Lateral Housing Developments,* 117 U. Pa. L.Rev. 1104 (1969).

Furthermore, a right to use PUD common areas is generally an easement appurtenant to the residential lots rather than a license

held by virtue of association membership. *See* 38 U.S.C. § 1803(d)(3) (VA Policies & Procedures for PUDs); 4A R. Powell & P. Rohan, *Powell on Real Property* ¶ 630.10[6] at 53B–87 (1995). While the condemnation award must compensate for damages to the easement itself, there is no basis in Colorado law for extending the damage award to include impacts to the entire dominant estate to which the easement is appurtenant.

Consequently, the private property of all of the homeowners which form the Genesee Foundation is not "one economic unit" for purposes of calculating condemnation residual impacts. Thus, the court did not err in refusing to hear evidence on the value of property held individually by the foundation members, or to consider impacts to their individual properties.

### B.

Finally, condemnee contends that the trial court erred in its determination of costs. We disagree.

The amount of compensation for expert witnesses must be reasonable and is within the discretion of the trial court. *See Rullo v. Public Service Co.*, 163 Colo. 99, 428 P.2d 708 (1967); *Worthen Bank & Trust Co. v. Silvercool Service Co.*, 687 P.2d 464 (Colo. App.1984).

Here, as discussed, the trial court properly excluded impacts to individual PUD property owners from the assessment of residual damages. Consequently, the court properly excluded the costs of expert witnesses who would have testified to those impacts.

The decree is affirmed insofar as it determined that condemnor is entitled to a way of necessity for ingress and egress across condemnee's land and as to the award of costs. The decree is reversed insofar as it made the way of necessity perpetual and failed to establish the proper extent of the way in size and use and as to the value of the way. The cause is remanded for further proceedings consistent with this opinion.

BRIGGS and TAUBMAN, JJ., concur.