**CITY OF STEAMBOAT SPRINGS, a Colorado home rule municipality, Petitioner–Appellee,**

v.

**Charles D. JOHNSON and Johnson Excavation, Inc., Respondents–Appellants.**

No. 09CA2520.

Colorado Court of Appeals, Division VII.

Aug. 5, 2010.

Rehearing Denied Sept. 9, 2010.

Anthony B. Lettunich, City Attorney, Daniel D. Foote, Staff Attorney, Steamboat Springs, Colorado, for Petitioner–Appellee.

Vance E. Halvorson, Steamboat Springs, Colorado, for Respondents–Appellants.

Opinion by Judge CONNELLY.

The City of Steamboat Springs has decided to construct a new highway on what once was greenbelt area. To do so, it obtained a judicial decree that it owned the greenbelts, condemned or acquired property owners' appurtenant rights to restrict use of that area to anything but greenbelts, and acquired adjoining properties.

This appeal involves property interests formerly owned by Charles D. Johnson and Johnson Excavation, Inc. (collectively John-

son). Johnson challenges the valuation of the partial condemnation of Johnson's own lot. The most significant legal issue, however, involves the proper method for valuing Johnson's loss of a non-exclusive easement right to have abutting land used only for greenbelt purposes.

The district court granted partial summary judgment on valuation issues regarding Johnson's (1) own lot and (2) interests in the greenbelt. We affirm the former but reverse the latter, and we remand for further proceedings.

## I. Background

West Acres Park subdivision in Steamboat Springs comprises ten lots, including industrial lots and a mobile home park. Johnson owns and operates an excavation business on Lot 4.

The subdivision is surrounded by four greenbelts, two of which are at issue here. These areas were dedicated as greenbelts in the original subdivision plat. The City does not dispute that landowners in the platted subdivision (unlike, say, members of the general public who may have used the greenbelts) had protected property interests in the greenbelts.

The City previously filed a quiet title action regarding the greenbelts; it named all owners in the subdivision. Most other owners defaulted; ultimately, Johnson was the only party deemed not to have waived the right to object to the City's requested relief. The court ruled that Johnson's interests in the greenbelt sufficed to grant Johnson standing to object to the proposed highway.

The court ruled in 2008 that the City had title to the greenbelts, but could not (other than through condemnation) use those areas for any inconsistent purpose such as highway construction. No party appealed, and this ruling became final.

Meanwhile, the City filed this condemnation action. As relevant here, it sought to condemn (1) parts of Johnson's Lot 4 property (some permanently and some temporarily for construction) and (2) Johnson's shared interests in parts of the greenbelts.

The court granted the City's motion for partial summary judgment as to the value of most of Johnson's interests. It noted that the case raised "[s]everal issues of first impression."

As to the condemned portions of Lot 4, the court concluded there was no genuine dispute as to the value of land taken permanently ($28,842) and temporarily ($4,567). It further concluded, however, that disputes regarding the damages to the remainder of Lot 4 precluded summary judgment on that issue.

Valuing Johnson's shared interests in the greenbelts was more complicated. The district court determined that, absent the greenbelt restriction, the undisputed market value of the two greenbelt areas would total $1,245,000 ($610,000 plus $635,000). It further determined that the undisputed effect of the greenbelt restriction was to reduce that value by ninety percent, meaning the pre-condemnation value was $124,500.

The court's ruling that the two greenbelts in their current state were worth $124,500 was only the first step. Next, because the City was taking only portions of the greenbelts, the controlling appraisal had calculated the fractional percentage of greenbelt areas being condemned (about one-third and one-quarter, respectively) to value the condemned greenbelts as approximately $36,000. Finally, the court had to determine how this $36,000 should be apportioned among Johnson and others with shared interests in the greenbelt. The City had argued that because Johnson owned roughly three percent of the subdivision land, Johnson should be entitled to that percentage (roughly $1,200) of the taken greenbelts' value. The court did not finally determine the value of this fractional interest but did reject Johnson's claims that he was entitled to the whole amount because other owners had defaulted.

The court concluded that Johnson was entitled to compensation of (1) some $33,000 for the property actually taken in Lot 4 (plus any damages caused to the remaining Lot 4 property) and (2) some fractional percentage of the $36,000 value of the former greenbelt areas. The court certified these partial sum-

mary judgment rulings for immediate appeal. *See* C.R.C.P. 54(b).

## II. Discussion

Johnson contends the district court erred in granting partial summary judgment regarding valuation of the taken interests. Our review is de novo. *Board of County Comm'rs v. Hygiene Fire Protection District*, 221 P.3d 1063, 1066 (Colo.2009).

### A. Lot 4 Interests

■ Johnson argues that summary judgment is unavailable in takings cases because property owners have a constitutional right to require that a jury determine the amount of compensation. *See* Colo. Const. art. II, § 15. We disagree.

The summary judgment rule, C.R.C.P. 56, plainly applies to eminent domain proceedings. Colorado civil procedural rules apply to "proceedings of a civil nature," including "all special statutory proceedings." C.R.C.P. 1(a). Our supreme court thus has held that "[p]roceedings under the Colorado Eminent Domain Statutes, [§§ 38–1–101 to –122, C.R.S.2009], are subject to the Rules of Civil Procedure." *Jacobucci v. Dist. Court*, 189 Colo. 380, 390, 541 P.2d 667, 674 (1975). Those rules would not apply if "inconsistent or in conflict with the procedure and practice provided by the applicable statute," C.R.C.P. 81(a), but that is not the case here. Contrary to Johnson's suggestion, there is no inconsistency between a court's "discretion[ary]" authority to order a jury view of the premises under section 38–1–107(1), C.R.S.2009, and the authority to grant summary judgment in appropriate cases.

■ Allowing summary judgment in appropriate eminent domain cases does not abridge a landowner's constitutional right to demand a jury. The interplay between summary judgment procedures and constitutional jury trial rights has received little examination in Colorado because the Seventh Amendment has not heretofore been applied to the states, *Firelock Inc. v. Dist. Court*, 776 P.2d 1090, 1096 (Colo.1989); *cf. McDonald v. City of Chicago*, —— U.S. ——, 130 S.Ct. 3020, 3034 & n. 13, 177 L.Ed.2d 894 (2010)

(Seventh Amendment civil jury trial right is one of the "handful of the Bill of Rights protections [that] remain unincorporated" against states under current law), and Colorado ordinarily provides "no constitutional right to a trial by jury in a civil action." *Kaitz v. Dist. Court*, 650 P.2d 553, 554–55 (Colo.1982). But federal courts uniformly have upheld summary judgment procedures against constitutional challenges.

■ The United States Supreme Court "held, over one hundred years ago, [that] a summary judgment proceeding does not deprive the losing party of its Seventh Amendment right to a jury trial." *In re Slatkin*, 525 F.3d 805, 811 (9th Cir.2008) (citing *Fid. & Deposit Co. v. United States*, 187 U.S. 315, 319–21, 23 S.Ct. 120, 47 L.Ed. 194 (1902)). The Court recently noted that "[i]n numerous contexts"—including "summary judgment"—"gatekeeping judicial determinations prevent submission of claims to a jury's judgment without violating the Seventh Amendment." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327 n. 8, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citing cases). Thus, even in takings cases where there is a constitutional right to a jury trial, summary judgment can be granted if there is no genuinely disputed factual issue to be tried to a jury. *See, e.g., Stanko v. Maher*, 419 F.3d 1107, 1112, 1119 (10th Cir.2005); *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1190 (11th Cir.2004); *cf. Etalook v. Exxon Pipeline Co.*, 831 F.2d 1440, 1446–47 (9th Cir.1987) (grant of summary judgment on issue of valuation of damaged property did not violate Seventh Amendment).

■ We therefore apply normal summary judgment standards to this case. While a property owner may demand a jury trial on valuation issues, a jury must confine its evaluation to proper evidence. *See Jagow v. E–470 Pub. Highway Auth.*, 49 P.3d 1151, 1157 (Colo.2002). Thus, an owner opposing a properly supported summary judgment motion must offer "evidence ... sufficient to demonstrate that a reasonable jury could return a verdict" in its favor. *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo.2007).

■ Admissible evidence of value may include expert appraisals, *see Farrar v. Total Petroleum, Inc.*, 799 P.2d 463, 467 (Colo.App. 1990), and the owners' own testimony of the property's market value. *Bd. of Dirs. of Baker Metro. Water & Sanitation Dist. v. Calvaresi*, 156 Colo. 173, 176, 397 P.2d 877, 879 (1964). While owners thus are not bound by appraisals, this means only that they "remain[ ] free to present ... such testimony and other evidence as might be relevant." *Farrar*, 799 P.2d at 466.

Here, there was no genuine dispute as to the values of the Lot 4 land taken permanently and temporarily from Johnson. In its motion for summary judgment, the City authenticated an appraisal (the Maddox appraisal) concluding that the value of the permanently taken land was $28,842 and the value of the temporarily taken land was $4,567. Johnson testified in his sworn deposition that he "accepted" and had no dispute with the Maddox appraisal. Partial summary judgment was appropriate on these valuation issues because where there is no genuinely disputed factual issue for a jury to resolve, "a trial would be useless." *D.R. Horton, Inc.—Denver v. D & S Landscaping, LLC*, 215 P.3d 1163, 1167 (Colo.App. 2008).

### B. Greenbelt Interests

We must decide (1) what type of property interest Johnson held in the former greenbelts and (2) how to value that lost interest. We first hold that Johnson's greenbelt interests were an easement appurtenant to his Lot 4 property—that is, Johnson's right to have the greenbelts remain greenbelts existed to benefit Lot 4. This first holding drives the second: the value of that lost interest depends not on the effect upon the greenbelts themselves but rather on the effect upon Lot 4. Accordingly, we remand the case for the district court to determine the amount, if any, by which loss of the greenbelts diminished the value of Lot 4.

### 1. Defining the Interests in the Greenbelts

■ The City concedes that Johnson had a compensable property interest—distinct from members of the general public who would lack any such interest—in the greenbelts. But the parties disagree on how to label that interest: the City calls it a negative easement, and Johnson calls it a servitude. The most apt label would seem to be simply that of an easement. The critical point, however, is that this interest is not a personal one but rather is an appurtenant interest that runs with Johnson's Lot 4 land.

■ The City is correct that Johnson held a negative easement (or, according to preferred modern usage, a "restrictive covenant") to ensure the areas were limited to greenbelt uses. *See* Restatement (Third) of Property: Servitudes § 1.2, cmt. g (2000). While Johnson also claims an affirmative right to use the greenbelts, that personal right was shared fully by the public; in any event, Johnson's right to compensation does not turn on any affirmative use of greenbelts. Affirmative easements are of course protected property interests, *see, e.g., United States v. Welch*, 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787 (1910); *Wright v. Horse Creek Ranches*, 697 P.2d 384, 387 (Colo.1985), but so too are negative easements or restrictive covenants. *Leigh v. Village of Los Lunas*, 137 N.M. 119, 108 P.3d 525, 529–30 (N.M.Ct. App.2004) (citing cases); *see generally* 4 Julius L. Sackman, *Nichols on Eminent Domain* § 13.29, at 13–225 (3d ed. 2009) *(Nichols)*.

The City concedes, and we agree, that Johnson's right to limit the areas to greenbelt uses was a protected property interest. This result is not contrary to *Smith v. Clifton Sanitation District*, 134 Colo. 116, 300 P.2d 548 (1956). *Smith*, citing the rule that "[p]arties may not by contract between themselves restrict the exercise of the power of eminent domain," denied compensation to persons who had "scheme[d]" in an "invalid" manner that was "contrary to sound public policy" to record restrictive covenants on the "eve of the filing of" a condemnation case. 134 Colo. at 119–21, 300 P.2d at 550. The case did not hold that restrictive covenants or negative easements are never compensable property interests.

■ Johnson, in turn, is correct that the interest could also be deemed a "servitude."

A servitude is simply a covenant that "runs with the land." Restatement (Third) of Property: Servitudes § 1.3(1) (2000).

■ Johnson's preferred label highlights the critical point that the interest runs with the land. Johnson's interest in the greenbelts (the "burdened" or "servient" estate) thus is "appurtenant" to Johnson's interest in Lot 4 (the "benefited" or "dominant" estate). *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo.1998). Because an appurtenant easement runs only with the benefited property, when property owners' connection to benefited property "terminates so does their connection to the easement." *Id.* (In contrast, an "easement in gross" would provide an independent "personal right" in the greenbelts. *See Lobato v. Taylor*, 71 P.3d 938, 945 (Colo.2002).)

2. Valuing the Interests in the Greenbelts

■■ That Johnson's greenbelt interest is appurtenant to Lot 4 rather than held personally is critical to deciding how that interest should be valued. Loss of such an appurtenant interest must be measured by reference to the property to which it is attached. *Welch*, 217 U.S. at 339, 30 S.Ct. 527; *Nichols* § 12.05[4][g], at 12–127; Restatement (First) of Property § 508, cmt. c (1944). There must be a before and after calculation of the benefited property's market value: first with, and then without, the restriction in place. *See United States v. Certain Land*, 220 F.Supp. 696, 701 (D.Me.1963); *Leigh*, 108 P.3d at 530; *Redev. Agency v. Tobriner*, 153 Cal.App.3d 367, 372, 200 Cal.Rptr. 364, 367–68 (1984).

The case must be remanded because the district court did not measure before and after values of Lot 4 but relied on appraisals of the greenbelts themselves. This was an incorrect way of valuing an appurtenant easement that spawned several complex issues—including how the value of the greenbelts should be determined, *see Hartford Nat'l Bank & Trust Co. v. Redev. Agency*, 164 Conn. 337, 321 A.2d 469, 471–73 (1973) (valuing "easement in gross"), and apportioned—that are obviated by valuing the effect upon each benefited lot.

■ The City has stated that this valuation method—examining before and after values of the benefited estate (Lot 4) rather than the burdened greenbelts—would be "acceptable." But it believes "this methodology is barred" by *Bear Creek Development Corp. v. Genesee Foundation*, 919 P.2d 948 (Colo. App.1996). We are not bound to follow a prior division's ruling. *See Am. Family Mut. Ins. Co. v. Murakami*, 169 P.3d 192, 193 (Colo.App.2007). In any event, the *Bear Creek* holding does not bar this methodology.

The relevant issue in *Bear Creek* involved valuation of a right of way on property owned by a homeowners' association (HOA). The division held that valuation turned on the diminished value of the HOA-owned property but not on any damage caused to other properties owned by individual homeowners. 919 P.2d at 955–57. It offered several reasons supporting this holding. It began by relying on the rule that an owner whose own property is not taken generally may not recover for damages caused by the taking of a neighbor's property. *Id.* at 956. Then it concluded, for several reasons, that the HOA and individual homeowners were separate entities rather than "one economic unit." *Id.* at 956–57. The language quoted by the City came at the end of this discussion:

> Furthermore, a right to use [HOA-owned] common areas is generally an easement appurtenant to the residential lots.... While the condemnation award must compensate for damages to the easement itself, there is no basis in Colorado law for extending the damage award to include impacts to the entire dominant estate to which the easement is appurtenant.
> Consequently, the private property of all of the homeowners which form the [HOA] is not "one economic unit" for purposes of calculating condemnation residual impacts. Thus, the court did not err in refusing to hear evidence on the value of property held individually by [HOA] members, or to consider impacts to their individual properties.

*Id.*

This language must be read in the context of the issue being decided in *Bear Creek*:

whether the HOA and individual homeowners formed a single economic unit such that a taking of property owned by the former also took property owned by the latter. We do not read *Bear Creek* to suggest (much less hold) that an appurtenant easement must be valued by reference to the burdened rather than benefited estate.

■ Nor does the so-called "undivided basis" or "unit" rule preclude valuing an appurtenant interest by reference to the benefited rather than burdened estate. This rule generally requires that, regardless of how many persons hold interests in a single condemned property, the amount of compensation apportioned among the various interest holders turns on "the fair market value of the property as a whole." *Montgomery Ward & Co. v. City of Sterling,* 185 Colo. 238, 243, 523 P.2d 465, 468 (1974). Here, however, the City's removal of the prior land use restrictions did not simply take one piece of property; rather, it effectively condemned multiple easements held individually by dominant estate holders. Accordingly, the undivided basis rule does not prevent individual valuation of benefited properties diminished by loss of appurtenant easements. *See Nichols* § 12.05[4][g], at 12–126 to –127.

### C. Public Trust Doctrine

■ Johnson has referred at times in this litigation to the public trust doctrine and suggested that the City should be required to dedicate equivalent open space in the surrounding area to replace the greenbelts. It is clear, however, that Johnson's status in this condemnation action is as a private party seeking compensation for private interests. No action on behalf of the public has been filed pursuant to C.R.C.P. 106 or otherwise. Accordingly, the district court was correct in declining to reach the merits of any potential public trust claim.

### III. Conclusion

The partial summary judgment is affirmed as to the valuation of Johnson's own lot and reversed as to the valuation of Johnson's greenbelt interests, and the case is remanded for further proceedings consistent with this opinion.

Judge BERNARD and Judge LICHTENSTEIN concur.