Tamara L. STORY, Plaintiff–Appellee
and Cross–Appellant,

v.

Richard W. BLY; Patsy A. Bly; and Bank
of the West, f/n/a Community First National
Bank, f/n/a The Bank, N.A., Defendants–Appellants
and Cross–Appellees.

No. 07CA2076.

Colorado Court of Appeals,
Div. III.

Dec. 24, 2008.

As Modified on Denial of Rehearing
Feb. 5, 2009.

Burns, Figa & Will, P.C., Geoffrey P. Anderson, Genevieve M. Bernal, Greenwood Village, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, James Birch, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge CASEBOLT.

In this private condemnation action to obtain an access easement over an existing roadway, respondents, Richard W. Bly, Patsy A. Bly, and Bank of the West (collectively, the Blys), appeal the judgment in favor of petitioner, Tamara L. Story, which granted an access easement across the Blys' property and awarded them $12,500 for the easement and resulting damages. Story conditionally cross-appeals on several issues. We affirm.

The Blys own land in Jefferson County upon which Bank of the West holds a mortgage. Story purchased a vacant property between the Bly property and that owned by a neighboring family, the McClintocks.

The Blys access their property from a county road by their private roadway, which is also used by the McClintocks. The road begins at the county road, traverses the Bly parcel, crosses Story's parcel, and ends at the McClintock property.

Story attempted to purchase an easement upon the private roadway from the Blys. When those negotiations failed, Story commenced this action seeking a private way of necessity under article II, section 14 of the Colorado Constitution and section 38–1–102, C.R.S.2008. She sought to condemn a twenty-foot easement, ten feet on either side of the centerline of the existing roadway, to provide physical access to her property. Her petition attached a map depicting the existing roadway and requested an order of immediate possession.

The Blys moved to dismiss Story's petition, contending that it failed to provide a legal description of the property to be taken and contained an inadequate description of Story's intended use. The trial court held a hearing on Story's request for immediate possession and the motion to dismiss. Shortly before the hearing, Story provided a legal description of the easement she was seeking, and she clarified at the hearing that she sought the easement for the purposes of building, constructing, maintaining, and accessing one single-family house that she planned to build.

The trial court denied the motion to dismiss. It concluded, as relevant here, that Story's petition adequately described the easement she sought because, although it did not set forth a legal description, it described the already existing roadway over which she sought the easement, and the Blys had not argued that they were unclear about its location. The court also found, in light of Story's testimony that she wanted the easement to construct, build, maintain, and access one single-family home, that the Blys were not deceived by Story's failure to describe in her petition the particular purposes for which she sought the easement.

The court determined that Story was entitled to the requested easement and condemned a twenty-foot easement in perpetuity across the existing roadway, describing the property by the legal description Story had provided. The court granted immediate possession to Story, conditioned upon posting a bond.

At a later jury trial to determine compensation and damages, the trial court precluded the Blys' expert from testifying concerning the cost to construct a new road over the

existing roadway. The court determined that the cost of construction was not an appropriate way to value the easement.

The jury awarded the Blys $3,300 for the easement and $9,200 for damages to the residue. The trial court later awarded costs to the Blys, but only allowed approximately one-half of their requested expert witness fees. This appeal followed.

## I. Condemnation Petition

The Blys contend that the trial court should have dismissed the condemnation petition because it was facially deficient under the eminent domain statute. We are not persuaded.

### A. Standard of Review

We view motions to dismiss under C.R.C.P. 12(b)(5) with disfavor. *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1099 (Colo.1995). We review a trial court's determination on a motion to dismiss de novo, *Abts v. Board of Education,* 622 P.2d 518, 521–22 (Colo.1980), and, like the trial court, must accept as true all averments of material fact contained in the complaint. *Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 122–23 (Colo.1992).

A complaint need not express a complete recitation of all facts that support the claim, but need only serve notice of the claim asserted. *Elliott v. Colo. Dep't of Corr.,* 865 P.2d 859, 861 (Colo.App.1993). Indeed, the chief function of a complaint is to give notice to the defendant of the transaction or occurrence that is the subject of the plaintiff's claims. *Kluge v. Wilson,* 167 Colo. 526, 527, 448 P.2d 786, 787 (1968). Thus, C.R.C.P. 12(b)(5) motions "are rarely granted under our 'notice pleadings.'" *Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286, 1291 (Colo.1992) (quoting *Davidson v. Dill,* 180 Colo. 123, 131, 503 P.2d 157, 162 (1972)).

We must view allegations in the complaint in the light most favorable to the plaintiff. *Verrier v. Colo. Dep't of Corr.,* 77 P.3d 875, 877 (Colo.App.2003).

Eminent domain proceedings are special statutory proceedings that must be conducted strictly according to statutory procedures. *Ossman v. Mountain States Tel. & Tel. Co.,* 184 Colo. 360, 366, 520 P.2d 738, 742 (1974). In determining the scope of the condemnation power, narrow construction is the rule. *Coquina Oil Corp. v. Harry Kourlis Ranch,* 643 P.2d 519, 522 (Colo.1982). An eminent domain statute should be strictly construed against the condemnor and liberally construed in favor of the property owner. *See Platte River Power Authority v. Nelson,* 775 P.2d 82, 83 (Colo.App.1989) (*Nelson*).

### B. Property Description

The Blys contend that the description of the property contained in the petition is insufficient. We disagree.

In relevant part, section 38–1–102(1), C.R.S.2008, requires a petition in condemnation to set forth "a description of the property."

Here, Story's condemnation petition states that the easement she seeks is a "20 foot wide" easement "over and across an existing dirt access road." Attached to Story's petition is a map that depicts the road in relation to the various properties. In our view, the petition gives notice of the claim asserted, identifies the transaction or occurrence, and informs the Blys sufficiently of the location of the proposed easement.

The Blys nevertheless contend that, under *Nelson,* 775 P.2d at 83, an easement must be described in the petition with such precision that the trial court may use the description to enter a rule and order at the end of the case. We disagree.

The *Nelson* division stated that "*the record supports the trial court's finding* that the ingress and egress portion of the easement was not described in the petition so as to enable it to enter a rule and order." *Id.* (emphasis supplied). We do not read that language to state a legal requirement that the petition must set forth precisely the legal description of the proposed easement such that a trial court may employ it at the end of the case to enter a rule and order. Instead, we view the division's statement as merely

concluding that the trial court's finding had support in the record. Indeed, we perceive nothing in section 38–1–102(1) that would require the petition to include a legal description.

Moreover, in *Nelson,* the trial court found that the petition contained *no* description of the easement that was being condemned, and, on appeal, the condemnor conceded the lack of any description in the petition. The case before us is distinguishable because Story's petition contains a description of the location of the easement, albeit not a legal description, and identifies that location by attaching a map.

The Blys further assert that the access road is substantially less than twenty feet wide in many locations and, thus, they were left to guess where the full width of the easement would fall. However, we must view allegations in the complaint in the light most favorable to the plaintiff, *Verrier,* 77 P.3d at 877, and it is logical to conclude that the easement would fall ten feet on either side of the centerline of the existing roadway. Moreover, it is undisputed that, before the hearing on the motion, Story provided a complete legal description of the proposed easement.

The Blys further assert that their real estate appraiser was unable to calculate just compensation without a legal description. However, the road was in existence and appeared clearly on the map submitted with the petition, and the Blys themselves used it frequently. They could clearly show their appraiser what property was sought. The statute does not require that the description of the property must be sufficient for an appraiser to value the easement. In addition, the Blys' appraiser had the legal description over a year before the jury trial to determine just compensation commenced.

## C. Description of Use

■■■ The Blys assert that, because the purposes for which the easement was sought were not adequately described in the petition, the court erred in denying their motion to dismiss. We disagree.

Under section 38–1–102(1), a condemnation petition must set forth "the purpose for which said property is sought to be taken or damaged."

■■■ The eminent domain statute requires that the condemnation petition "describe in detail the nature of the use to be made of the land so that the burden on the landowner can be accurately evaluated." *Bear Creek Development Corp. v. Genesee Foundation,* 919 P.2d 948, 954 (Colo.App. 1996). Further, section 38–1–105(4), C.R.S. 2008, instructs that a rule and order conveying the easement must include "the purposes specified in such petition."

Here, the petition states that Story seeks a private way of necessity in the form of an easement across the existing dirt road for access to her property, and at a later point explains her need "to access the Story property, and permit the use and enjoyment of that property." In our view, these statements adequately describe the purpose of the easement as access over the existing roadway, and the nature of the use is clear from the context—travel by any means of transportation from the county road to the Story property.

It is true, as the Blys assert, that the use description of "access" does not indicate whether Story needed the easement for "farming or ranching, a vacation cabin, a full-time residence, four full-time residences, or some other more intensive use." However, at the hearing on the request for immediate possession and the Blys' motion to dismiss, Story clarified that she desired the access for constructing, building, maintaining, and accessing one single-family home. That description, provided over a year before the just compensation trial, allowed the Blys to accurately evaluate the burden Story proposed to place upon their property, and their appraiser was fully able to render an opinion on the value of the easement. *See State Dep't of Highways v. Woolley,* 696 P.2d 828, 830 (Colo.App.1984) (petition declaring only the need to obtain a "slope easement" without further description was sufficient because testimony amplified its meaning and purpose, and landowner was not deceived by failure of condemnor to describe its full extent in the

petition because landowner's appraiser was able to value the easement).

Here, the trial court found that the Blys were not deceived by the petition's description of the use and purposes, and the the record supports that determination.

We therefore reject this assertion.

## II. Scope of Easement

The Blys assert that the trial court erred in its rulings regarding the scope of the easement. We disagree.

### A. Standard of Review

We review the trial court's conclusions of law de novo. *Hinojos v. Lohmann,* 182 P.3d 692, 695 (Colo.App.2008).

### B. Full-time or Part-time Use

The Blys contend that nothing in the trial court's order or the jury's verdict specifies whether the easement is for full-time or part-time use. They request that we limit Story's use to part-time. We decline to do so.

The scope of an easement is measured by its nature and purpose. *Barnard v. Gaumer,* 146 Colo. 409, 412, 361 P.2d 778, 780 (1961). If the width, length, and location of an easement for ingress and egress are specifically set forth in the easement grant, its owner has the right to unobstructed passage over the entire area described in the grant. In addition, the owner may do whatever is reasonably necessary to permit its full use and enjoyment. *See Riddell v. Ewell,* 929 P.2d 30, 32 (Colo.App.1996).

Here, the nature and purpose of the easement are for building, maintaining, and accessing a single-family home. Nothing in the statement of purpose indicates that the home will be a part-time or vacation home only. The trial court held that Story can "do whatever is reasonably necessary to permit [the easement's] full use and enjoyment" and that Story is entitled to use the easement "in any frequency, manner, and intensity" so long as she does not expand the scope of the easement. We perceive no error in that determination.

We reject the Blys' contention that Story limited her use to part-time by her closing arguments to the jury. Counsel's statements that the Blys would see a car driving down the driveway "every once in a while" or "occasionally," are not inconsistent with a full-time residence.

Nor do these statements constitute judicial admissions. A judicial admission is "a formal, deliberate declaration which a party or [an] attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo. 1986). A judicial admission must be unequivocal and must relate to a question of fact. *Larson v. A.T.S.I.,* 859 P.2d 273, 276 (Colo. App.1993).

Here, the scope of the easement was not at issue in the jury trial. There was no question of fact for the jury to determine concerning the scope of the easement. And there is no indication that Story's counsel intended these statements to dispense with proof of any facts.

We also reject the Blys' assertion that Story's testimony at trial about her personal approach to maintenance of easements is evidence that she abandoned her request for a full-time easement. Nothing in the record supports that assertion.

### C. Maintenance

The Blys contend that the maintenance obligations the trial court imposed were erroneous. They assert the court incorrectly relied on the Restatement (Third) of Property: Servitudes § 4.13 (2000). We disagree.

The provisions of the Restatement at issue state:

(3) Joint use by the servient owner and the servitude beneficiary of improvements used in enjoyment of an easement or profit, or of the servient estate for the purpose authorized by the easement or profit, gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion the ser-

vient estate or improvements used in common.

(4) The holders of separate easements or profits who use the same improvements or portion of the servient estate in the enjoyment of their servitudes have a duty to each other to contribute to the reasonable costs of repair and maintenance of the improvements or portion of the servient estate.

■ The trial court's reliance on these provisions of the Restatement is consistent with the equitable responsibilities of a nonexclusive easement right. Where an easement is nonexclusive in nature, both the holder of the easement and the owner of the land burdened by the easement have rights to use the property. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1238 (Colo.1998).

Here, because Story shares the use of the road with the Blys it follows that the right to use the property engenders an equal right and obligation to maintain the property. *See Colorado Mountain Properties, Inc. v. Heineman*, 860 P.2d 1388, 1393 (Colo.App. 1993) (all lot owners served by easement should share proportionately in the expense of upkeep); *Hayes v. Tompkins*, 287 S.C. 289, 294, 337 S.E.2d 888, 891 (S.C.Ct.App. 1985) (holding apportionment of maintenance expenses was equitable where both parties used road for access); *McDonald v. Bemboom*, 694 S.W.2d 782, 786 (Mo.Ct.App.1985) (maintenance costs apportioned between dominant and servient owners where both used roadway easement regularly).

### D. Easement Appurtenant

■ The Blys argue that the easement should be limited to Story's personal use rather than extending to her successors or assigns. We disagree.

■ An easement is appurtenant when it "runs with [the] land and is incapable of existence separate and apart from the particular land to which it is annexed." *Lewitz v. Porath Family Trust*, 36 P.3d 120, 122 (Colo. App.2001).

Here, the court's grant of the easement states that the "Court adjudicates and condemns an easement in perpetuity." Because there would be no need for the grant to be "in perpetuity" if it were limited only to Story personally, and because this easement could not exist separate from Story's land, this language created an easement appurtenant.

Moreover, the trial court specifically found the easement was necessary for access to Story's property. Without an appurtenant easement, a succeeding owner of Story's property would also not have access. Given this ongoing problem for the fee owner of landlocked property, the condemnation easement is considered appurtenant. *See Coquina Oil Corp.*, 643 P.2d at 522 (if the fee owner of a landlocked property condemns the right of way, it is permanent).

Accordingly, we perceive no error.

### III. Valuation Evidence

The Blys assert that the trial court erred in precluding certain valuation evidence. Specifically, they contend the court erroneously precluded their appraiser from testifying to the cost of a replacement road, limited the valuation testimony provided to the jury to the comparable sales method only, and did not take into account the wider swath of land needed to accommodate snow stacking on the easement. We are not persuaded.

### A. Standard of Review

We review a trial court's ruling regarding the admissibility of evidence under an abuse of discretion standard. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo.2000). An abuse of discretion occurs when a ruling is manifestly arbitrary, unreasonable, or unfair. *Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003).

### B. Cost of Constructing the Road and Comparable Sales

■ Article II, section 15 of the Colorado Constitution provides that private property "shall not be taken or damaged, for public or private use, without just compensation."

■ When private property is condemned, the property owner is entitled to recover "an amount equal to the loss which

he has suffered by reason of the taking, and nothing more." *City of Englewood v. Weist*, 184 Colo. 325, 331, 520 P.2d 120, 123 (1974); *City of Brighton v. Palizzi*, 214 P.3d 470, 473 (Colo.App. 2008). Where only a portion of the condemnee's property is taken, just compensation includes the value of the property interest actually taken and damages to the remainder of the property. *E–470 Pub. Highway*, 3 P.3d at 23.

■■■ In determining the value of the land taken, the jury is to consider its market value, which is the price that property will bring when offered for sale by one who desires but is not obliged to sell it, and is bought by one who desires it but is under no necessity of buying. *Bd. of County Comm'rs v. Noble*, 117 Colo. 77, 80, 184 P.2d 142, 143 (1947).

In arriving at an opinion as to value, real estate appraisers traditionally utilize three approaches: the market data or comparable sales method; the cost of construction or reproduction costs less depreciation method; and the capitalization of income method. Opinions as to the value of real property, whether based upon the comparable sales approach, the reproduction costs less depreciation approach, or the capitalization of income approach, all are intended to provide an owner or an expert with a method of arriving at the fair, actual cash market value of the property to be condemned. The market data or the comparable sales approach generally provides the best evidence of value. *Denver Urban Renewal Auth. v. Berglund–Cherne Co.*, 193 Colo. 562, 565, 568 P.2d 478, 480 (1977).

■■■ Generally, no purpose is served by limiting expert testimony to one approach or to the most appropriate method of attaining an opinion as to value. The trier of fact must weigh the opinion and judge the credibility of an expert witness on value to determine which of the three approaches is most indicative of the actual market value of the property to be condemned. *Id.* at 566–67, 568 P.2d at 481.

Here, according to the Blys' offer of proof, their expert would have testified that the cost method of appraisal involves estimating the current replacement cost of the improvements on the property being taken, reduced by depreciation, and then adding that cost to the value of the land taken. He would have testified that the replacement cost of the private roadway over which Story sought an easement was approximately $99,000 and, because Story would be one of three landowners who would be using the driveway, he would have allocated one-third of the cost to her. Accordingly, he would have opined that the contributory value of the improvement Story was taking would be approximately $33,000.

Story objected to this proposed testimony. She pointed to the fact that the existing roadway had been on the Blys' property for decades and was present when they purchased it. Further, Story argued that she was not "taking" the road in the traditional condemnation sense, where the condemnor takes full ownership and use away from the condemnee, who thus cannot use it anymore. Instead, she sought a nonexclusive easement to use the road along with the Blys, as owners of the servient estate, and the neighboring McClintocks.

During the hearing on this issue, Story relied on *Colorado Mountain Properties, Inc. v. Heineman*, 860 P.2d at 1392. In that case, which involved the condemnation of an access easement on an existing road that the defendant had previously built on his property, the defendant argued that he should be awarded more than nominal damages for compensation based on the development costs of the road. A division of this court first noted that compensation is based on market value, and that other factors such as replacement costs or repair costs, are admissible only if they aid in a determination of market value. *Id.* It then held that there was "no evidence presented of any additional cost of the roadway other than evidence of the initial costs which were not associated with the subsequent grant of the access easement." *Id.*

Further, in dealing with the defendant's counterclaim for unjust enrichment, the division determined that the record showed that the defendant would have incurred development costs for the road regardless of wheth-

er the plaintiff pursued its right to condemn the easement. *Id.*

The Blys argued at the hearing that *Heineman* was distinguishable because it dealt only with damages to the residue, not with valuation of the improvement being taken. They also argued that Story was taking both the raw land underlying the roadway and the use of the physical improvement itself, and that just compensation necessarily includes payment for both the land taken and the improvements on the land. They contended that Story was getting an improvement on top of the land in the form of an improved road for which she should pay her fair share.

The trial court excluded the proffered evidence. It concluded that the cost of the road did not bear upon the value of the access right. It stated that the way one values something is not

> by looking at [the road] and saying well, if this road wasn't there, Mrs. Story would have to build it. You look at it and you say the road is here, how much is it worth? We look at comparable areas. We don't look at how much it cost to build to begin with and divide it into thirds.

The court found no linkage between the expert's proffered opinion on the cost to build the road and the market value of the property.

We perceive no abuse of discretion by the trial court in excluding this testimony. *Heineman* is factually similar to this case because in both, the owner of the servient estate sought compensation for a nonexclusive easement over an already existing roadway and contended that the costs of constructing that road should be considered in determining the value, but no expert here or in *Heineman* could point to any costs incurred by the servient estate owner for actually constructing the road that would be caused by the court's grant of the easement at issue. In essence, the improvement is not fully being "taken," but, instead, an additional user is granted authority to use the improvement. The road already exists, and the costs to replace that road, while relevant to what the easement holder might have to pay at some future date if the current road re-

quires replacement, are not relevant to determining the value of the use the easement holder is being awarded.

We reject the Blys' assertion that *Heineman* is distinguishable because it addressed only damages to the residue, not the value of the property actually taken. We do not read *Heineman* to so hold. The division noted there that the trial court had "awarded a nominal amount of $100 for the roadway easement and $70,800 for ... two condemned lots [that were rendered unusable because of the access roadway]" but that "[o]nly the nominal damage award [was] being contested" in the appeal. 860 P.2d at 1391. Accordingly, the *Heineman* division was reviewing the trial court's award for the easement itself, not the award for residual damages.

Our conclusion is supported by other authorities. *See Cordones v. Brevard County,* 781 So.2d 519, 524 (Fla.Dist.Ct.App. 2001)(where there is no evidence that the condemned property interest is unique, none of the improvements on the property will be displaced, and the taking only involves an easement, cost method of valuation is improper); *Southern Indiana Gas & Elec. Co. v. Russell,* 451 N.E. 2d 673, 677 (Ind.Ct.App. 1983)(in determining value of an easement for overhead transmission lines, cost approach improper where interest taken is only an easement that does not displace the improvements on the servient estate).

We acknowledge that the trial court's ruling that only the comparable sales method could be used to value the easement appears to be inconsistent with case law stating that the jury should determine which appraisal method yields the proper value. *See Denver Urban Renewal Authority v. Berglund–Cherne Co.,* 193 Colo. at 567, 568 P.2d at 481. However, one or more of these valuation approaches may also be inapplicable in a given case. *See 501 South Cherry Joint Venture v. Arapahoe County Bd. of Equalization,* 817 P.2d 583, 588 (Colo.App.1991) (discussing valuation for purposes of tax assessment). And while we note that no expert here could find comparable sales of driveway easements, that did not require use of the

cost method. The experts were able to compare sales of properties without improved roadways and those that had improved roads, and provided the jury with information about comparable property values with and without roadways.

We therefore conclude that, under the facts and circumstances of this case, the court did not abuse its discretion in excluding the proffered expert testimony.

### C. Snow Stacking

■ The Blys also assert that the trial court erred by precluding evidence regarding the need to take a wider swath of land to accommodate snow stacking. We disagree.

During the compensation jury trial, the court ruled that evidence regarding whether twenty feet was sufficient to accommodate snow stacking was speculative and did not allow testimony on the issue. We perceive no abuse of discretion in that determination. There was no evidence that more snow would have to be deposited simply because another easement was being imposed. *See Wassenich v. City & County of Denver*, 67 Colo. 456, 466, 186 P. 533, 537 (1919) (jury may not allow for speculative or prospective values).

### IV. Costs Award

The Blys assert that the trial court erred in awarding only one-half of their expert witness fees. We disagree.

### A. Standard of Review

■ A condemnee is entitled to an award of reasonable costs, *City of Colorado Springs v. Berl*, 658 P.2d 280, 281 (Colo.App.1982), because requiring the landowner to pay costs would reduce the just compensation for the taking. *Id.*

We review cost rulings under an abuse of discretion standard. *Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 813 (Colo. 1993).

### B. Appraiser's Fees

■ The award of an expert witness fee is within the discretion of the trial court. *Leadville Water Co. v. Parkville Water Dist.*, 164 Colo. 362, 366, 436 P.2d 659, 661 (1967).

If an expert is hired to testify but does not do so because the testimony is properly excluded, fees are also properly reduced or excluded. *Bear Creek*, 919 P.2d at 957.

Here, the Blys incurred $22,373.55 in costs for the real estate appraisal expert. However, the trial court only awarded $11,186.78 in fees, concluding that the entire cost was "unreasonable." Further, the trial court stated that, because the expert was prepared to testify on the value of the property crossed by the easement, the cost of building the roadway, the damages due to snow accumulation, and the decrease in value to the remainder of the property, and two of those areas of testimony were excluded at trial, the fees awarded should be reduced.

Even if we assume, as the Blys argue, that the expert spent only a few hours on each of the areas of testimony that the trial court excluded, the court's conclusion that his fees were "unreasonable" is not refuted. Accordingly, we find no abuse of discretion in the trial court's limitation. *See id.*

### C. Road Construction Expert

■ The Blys assert that they incurred $200 in fees of a road construction expert that the court erroneously failed to award. We disagree. Because the trial court did not abuse its discretion in excluding evidence related to the cost of constructing the road, the subject upon which this expert was prepared to testify, the court did not abuse its discretion in denying the request for these fees. *See id.*

### D. Costs on Appeal

Finally, the Blys assert that they are entitled to costs for this appeal. We disagree. As the prevailing party, Story is entitled to costs. *See* C.A.R. 39(a).

### V. Cross-Appeal

Because Story has raised issues for our determination only if we reverse the judgment in any respect, and we are affirming it

in toto, we need not address Story's issues on cross-appeal.

The judgment is affirmed.

Judge LOEB and Judge ROMÁN concur.